# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3502

_____

United States of America,

*Plaintiff - Appellee,*

v.

James Nathan Fry,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 9, 2014
Filed: July 1, 2015

_____

Before COLLOTON, BRIGHT, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted James Fry of five counts of securities fraud, four counts of wire fraud, and three counts of making false statements to the Securities and Exchange Commission, in connection with a Ponzi scheme orchestrated by Thomas

Petters. The district court[1] sentenced Fry to a total of 210 months' imprisonment. On appeal, Fry argues that we should presume that the district court sentenced him vindictively, in retaliation for his exercise of the right to a jury trial, because Fry's sentence was longer than sentences imposed on defendants who pleaded guilty in related cases. We see no cause to presume vindictiveness by the sentencing judge, and we reject Fry's other challenges to his convictions and sentence. We therefore affirm the judgment.

I.

Beginning in approximately 1999, Fry solicited funds from investors and directed them into promissory notes issued by Petters Company, Inc. Fry told investors that the notes would be used to finance purchases of consumer merchandise that would be resold to retailers at a profit. In fact, the Petters Company notes were part of a multi-billion dollar Ponzi scheme orchestrated by Thomas Petters, who was convicted and sentenced in a separate case. *See United States v. Petters*, 663 F.3d 375, 378-79 (8th Cir. 2011). Almost all of the purported merchandise transactions were fictitious, documentation for the transactions was fabricated, and early investors were paid purported profits with money raised from the sale of notes to later investors.

Fry raised money from investors through hedge funds known as the Arrowhead Funds, where he recruited others to assist in perpetrating the fraud. Between 1999 and 2008, the Arrowhead Funds invested over $500 million in Petters Company notes. Beginning around 2001, Fry knowingly misrepresented to investors that the Arrowhead Funds received payment directly from retailers, in genuine transactions, when in fact payment was received only from the Petters Company. Fry also told

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

investors and potential investors falsely that the Petters Company notes were paid on time after payments were substantially delayed beginning in Fall 2007. When the Petters Company notes were approaching default, Fry arranged for the payment due date to be extended, so that the notes would not technically be in default. Even then, Fry solicited tens of millions of dollars in additional investments. All told, Fry caused approximately $130 million in losses for at least forty-four victims, while he collected tens of millions of dollars in performance and management fees for himself and entities he controlled.

Fry also made false statements to the Securities and Exchange Commission during its investigation of the Arrowhead Funds. Fry falsely denied that he approved several pitch books regarding the Petters Company notes for distribution to investors, and falsely claimed that he instructed an employee not to distribute the books. Fry also lied about his knowledge that retailers were not making payments on the Petters Company notes.

A grand jury charged Fry with securities fraud, in violation of 15 U.S.C. §§ 77q(a) and 77x and 18 U.S.C. § 2, wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, and making false statements to the Securities and Exchange Commission, in violation of 18 U.S.C. § 1001(a)(2). He proceeded to trial and was convicted on all twelve counts. The district court sentenced Fry to 210 months' imprisonment, and this appeal followed.

Several other participants in the Petters scheme pleaded guilty to various charges and were sentenced by the same judge. Fry's appeal is premised in large part on a comparison of his sentence with the punishment imposed on four of these other participants, so a brief summary of their cases is appropriate here.

Gregory Bell was convicted on one count of wire fraud. Bell managed several hedge funds that invested in Petters Company notes. In late 2007, Bell extended the

due dates on the Petters Company notes and failed to advise investors that payment had not been received by the original due date. Bell also engineered so-called "round trips," in which money was shuffled between his investment funds and a Petters Company bank account to create the appearance that the investment funds were receiving payment on the notes. The court found that Bell was responsible under the sentencing guidelines for a loss amount of more than $200 million. Bell pleaded guilty and cooperated with the government. The court sentenced him to seventy-two months' imprisonment, before Fry was sentenced.

Larry Reynolds was convicted on one count of conspiracy to commit money laundering after assisting Petters in "routing $12 billion in investor funds through Reynolds's company's California bank account." *United States v. Reynolds*, 643 F.3d 1130, 1132 (8th Cir. 2011). Reynolds pleaded guilty and cooperated with the government in the investigation. *Id.* at 1133-34. In sentencing Reynolds, the district court took into account that Reynolds had "provided the equivalent of substantial assistance" in the investigation and prosecution of other persons. *Id.* at 1135. The court imposed a sentence of 130 months' imprisonment, before Fry was sentenced.

David Harrold and Bruce Prevost were Fry's co-defendants. Harrold and Prevost founded investment funds that solicited money from investors for Petters Company notes, starting in 2002. They falsely represented to investors that payments on the notes were received directly from the retailers and that payments were timely after Fall 2007. Harrold and Prevost traded notes that were close to default against new notes with new payment dates, so they would not have to disclose a default to their investors. The district court found that Harrold was accountable for a loss amount of between $50 and $100 million; Fry says that Prevost caused a loss of $720 million, although that figure is not available in the record on appeal.

Harrold and Prevost both pleaded guilty to four counts of securities fraud and cooperated with the government. They were sentenced after Fry. The court

sentenced Harrold to sixty months' imprisonment and gave Prevost a term of ninety months.

At the sentencing hearing for Fry, the government asserted that Fry's role in the Petters Company scheme was more substantial than the involvement of Harrold, Prevost, and Bell. According to the government, the structure that Fry developed to infuse investor funds into the Petters Company notes was later adopted by Prevost and Harrold. With Fry's knowledge, the prosecution explained, Bell, Prevost, and Harrold copied marketing materials containing misrepresentations about the Petters Company notes that Fry had developed. Fry then lied to the Securities and Exchange Commission and obstructed the investigation of the fraud scheme.

II.

Fry's only challenge to his convictions concerns two counts of making false statements to the Securities and Exchange Commission. He contends that two of the counts were multiplicitous (*i.e.*, that they charged the same offense), and that the Double Jeopardy Clause forbids his conviction on both counts. Fry did not present this claim in a pretrial motion, as required by Federal Rule of Criminal Procedure 12(b)(3)(B)(ii). Under Rule 12(c)(3), as amended December 1, 2014, a court may consider an issue not timely raised under Rule 12(b)(3) only upon a showing of "good cause," which requires a showing of cause and prejudice. *See Davis v. United States*, 411 U.S. 233, 242-43 (1973).

Amended Rule 12 applies to pending appeals such as this one where it is "just and practicable." Order Amending Federal Rules of Criminal Procedure, 2014 US ORDER 0015 (U.S. Apr. 25, 2014) (Westlaw). Given that Fry failed to raise the issue as required by rule, and at most might have claimed entitlement to plain-error review under former circuit law, *compare United States v. Robertson*, 606 F.3d 943, 950 (8th Cir. 2010), *with United States v. Herzog*, 644 F.2d 713, 716 (8th Cir. 1981), we see

no reason to forego application of the current version of Rule 12. *See United States v. Anderson*, 783 F.3d 727, 741 (8th Cir. 2015). Commentary to amended Rule 12 makes clear that former Rule 12(e) was never designed to permit appellate review without a showing of good cause, *see* Fed. R. Crim. P. 12, advisory committee's note to 2014 amendment, and this court never granted discretionary relief under a plain-error standard based on former Rule 12.

Applying amended Rule 12(c)(3), Fry has not shown "good cause" for failing to raise a timely challenge to the multiplicity of the indictment. He claims that the two disputed counts "related to the creation and distribution of pitch books for investments in Arrowhead funds by one individual," and that the identity between the counts was "not apparent from the face of the indictment." The third superseding indictment, however, plainly revealed the essence of the two charges. The first count charged Fry with falsely stating that "he never approved the . . . pitch books for distribution to investors," while the second count alleged that "he informed [an employee] that the . . . pitch books were inaccurate and he instructed her not to send them to investors." R. Doc. 181, at 16-17. The indictment gave sufficient notice for Fry to advance the multiplicity argument that he raises belatedly on appeal, and we therefore decline to address it.

III.

In challenging his sentence, Fry's lead contention is that this court should presume that the district court vindictively sentenced him in retaliation for his exercise of the right to a jury trial, in violation of the Due Process Clause. Fry complains that he was sentenced to a term of 210 months' imprisonment after a jury trial, while "similarly situated" participants in the Petters scheme received lesser terms after pleading guilty.

The Supreme Court applied a presumption of vindictiveness in *North Carolina v. Pearce*, 395 U.S. 711 (1969), where a defendant successfully attacked a first conviction, sustained a second conviction after retrial, and then received a greater punishment on the second conviction than the trial court had imposed after the first. The Court later summarized *Pearce* as follows:

> Positing that a more severe penalty after reconviction would violate due process of law if imposed as purposeful punishment for having successfully appealed, the court concluded that such untoward sentences occurred with sufficient frequency to warrant the imposition of a prophylactic rule to ensure "that vindictiveness against a defendant for having successfully attacked his first conviction . . . (would) play no part in the sentence he receives after a new trial . . ." and to ensure that the apprehension of such vindictiveness does not "deter a defendant's exercise of the right to appeal or collaterally attack his first conviction . . . ."

*Colten v. Kentucky*, 407 U.S. 104, 116 (1972) (quoting *Pearce*, 395 U.S. at 725). Where the prophylactic rule applies, a sentencing judge must cite "objective information . . . justifying the increased sentence" to rebut the presumption of vindictiveness. *Texas v. McCullough*, 475 U.S. 134, 142 (1986). Fry seeks application of a similar presumption to protect the exercise of the right to a jury trial, and he requests a remand for resentencing.

The Court's decision in *Alabama v. Smith*, 490 U.S. 794 (1989), provides important guidance for resolving Fry's contention. *Smith* explained that the presumption of vindictiveness applies only where there is a "'reasonable likelihood'" that an increase in sentence is the product of actual vindictiveness that would violate the Constitution. *Id.* at 799 (quoting *United States v. Goodwin*, 457 U.S. 368, 373 (1982)). The presumption may be applied "in the absence of any proof of an improper motive" and thus may "block a legitimate response to criminal conduct." *Id.* Therefore, where there is no such "reasonable likelihood"—that is, where "the

increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge," *id.* at 801—"the burden remains upon the defendant to prove actual vindictiveness." *Id.* at 799.

*Smith* involved a defendant who first pleaded guilty and received a sentence, but then withdrew his plea, proceeded to trial, and received an increased sentence from the same judge after a reconviction. *Id.* at 795-96. The defendant alleged that the sentencing judge vindictively imposed an increased sentence in retaliation for his withdrawal of the guilty plea and exercise of the right to trial by jury.

The Supreme Court held that no presumption of vindictiveness applied. The Court explained that the relevant sentencing information available to a judge after a guilty plea "will usually be considerably less than that available after a trial." *Id.* at 801. A jury trial may give the court "fuller appreciation of the nature and extent of the crimes charged," and greater insight into the defendant's moral character and suitability for rehabilitation. *Id.* The Court also observed that a guilty plea may justify leniency, *id.* at 802, and that when a defendant is convicted after trial, "factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Id.* at 801. A principal reason for the presumption in *Pearce* did not appear in *Smith*: a court conducting a trial after a defendant withdraws a guilty plea is not simply "do[ing] over what it thought it had already done correctly." *Id.* at 801 (internal quotation marks omitted).

It follows from *Smith* that no presumption of vindictiveness is warranted in the class of cases where a defendant who is convicted after trial alleges that "similarly situated" defendants who pleaded guilty were sentenced to lesser punishment. Even where the *very same person* receives a greater punishment after trial than after guilty plea, there is no presumption of vindictiveness. The reasons cited in *Smith* for rejecting a presumption apply at least as strongly when a defendant complains about a disparity of sentences imposed on two different people. A sentencing judge likely

has more information about an offender who proceeds to trial than about a defendant who pleads guilty. And guilty pleas—as they conserve judicial and prosecutorial resources and often represent an expression of remorse and acceptance of responsibility by the defendant—provide a legitimate reason for leniency that is not present in the case of a defendant convicted after trial. *Brady v. United States*, 397 U.S. 742, 752 (1970); *United States v. McQuay*, 7 F.3d 800, 802-03 (8th Cir. 1993).

The case against presuming vindictiveness is even stronger where a court is asked to compare sentences involving different defendants. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). The natural potential for each "unique study" to produce different sentencing considerations counsels against presuming that vindictiveness by a judge is at work whenever two defendants do not receive identical sentences. In view of the distinctions between post-trial and post-plea sentencings cited in *Smith*, and the obvious potential that differences between individual offenders will account for differential treatment at sentencing, we see no cause to presume that a judge who imposes different sentences for different defendants in related cases is motivated by vindictiveness toward those who exercise the right to trial by jury. We are not convinced that "such untoward sentences occur[] with sufficient frequency to warrant the imposition of a prophylactic rule." *Colten*, 407 U.S. at 116.

Fry relies on two decisions of other circuits to support a presumption of vindictiveness where a sentencing judge imposes greater sentences for a defendant convicted after trial than for a defendant in a related case who pleads guilty. *See United States v. Mazzaferro*, 865 F.2d 450, 457-59 (1st Cir. 1989); *United States v. Capriola*, 537 F.2d 319, 320-21 (9th Cir. 1976). Neither decision gives a persuasive reason to apply a prophylactic presumption here. Both cases were decided before

*Smith*, and their reasoning has been superseded by the Supreme Court's subsequent analysis. *See Santana-Diaz v. United States*, No. 95-2011, 1996 WL 329903, at *1 (1st Cir. June 17, 1996) ("The mere fact that co-defendants, who pled guilty, received lesser sentences does not show that it is reasonably likely that Santana was vindictively sentenced."). *Mazzaferro*, moreover, did not merely involve disparate sentences for allegedly "similarly situated" defendants. In that case, a defendant who played a "minor role" in the crime was sentenced to twenty years after a trial, while the "prime mover in carrying out the crime" received a ten-year sentence after pleading guilty. 865 F.2d at 460. Nothing comparable is presented here.

No presumption of vindictiveness applies, and Fry does not advance a claim of actual vindictiveness on this record. There was no violation of the Due Process Clause.

IV.

Fry also claims that the district court committed procedural error at sentencing by failing to consider sufficiently the need to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6), and by failing adequately to explain the sentence. Fry did not object on these grounds in the district court, so we review under the plain-error standard. *United States v. Jones*, 756 F.3d 1121, 1122 (8th Cir. 2014) (per curiam). Fry has not established an obvious error that caused prejudice and a miscarriage of justice. *See United States v. Olano*, 507 U.S. 725, 732-36 (1993).

A district court need not "categorically rehearse the § 3353(a) factors on the record," or "make specific findings on the record about each § 3353(a) factor." *United States v. Deegan*, 605 F.3d 625, 630 (8th Cir. 2010) (internal quotation mark omitted). Nor is the court "required to make a specific rejoinder to each argument advanced by the defendant." *United States v. Barron*, 557 F.3d 866, 868 (8th Cir. 2009). Instead, "it simply must be clear from the record that the district court actually

-10-

considered the § 3553(a) factors in determining the sentence." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). "We consider the entire sentencing record, not only the district court's statements at the hearing, in determining whether the court's consideration of § 3553(a) was adequate." *Barron*, 557 F.3d at 868.

There was no obvious procedural error at Fry's sentencing. The district court specifically discussed the need to avoid unwarranted sentencing disparities, and even assumed that it was required to consider disparities among co-conspirators. The court acknowledged Fry's arguments on that point, and listed the nine defendants previously sentenced in related cases, but remarked that "it's hard to match people," and that "all of these individuals are different." R. Doc. 355, at 36. The court explained that the amount of loss attributable to each defendant did not necessarily dictate the appropriate sentence, and concluded that the differences among sentences were not unwarranted because "there is a wide disparity here"—meaning the various defendants were situated differently. *Id.* at 38. The court thus explicitly responded to Fry's argument and considered the need to avoid unwarranted sentencing disparities.

Fry also complains that the district court failed to consider the need to avoid sentencing disparities with Prevost and Harrold. But these two offenders were sentenced after Fry, and the court at Fry's sentencing could not have discussed sentences that were not yet imposed. *United States v. McDowell*, 676 F.3d 730, 733 (8th Cir. 2012).

The court's explanation for the sentence was not plainly inadequate. The court cited the statutory factors of § 3553(a) and highlighted particular concerns with Fry's offense conduct: that he lied to the Securities and Exchange Commission, withheld information from his investors, and withheld information about the criminal record of a confederate—thereby extending the scheme and causing more losses than would

-11-

have been incurred if he had been truthful and forthright. Under a plain-error standard, there was sufficient explanation on the record to show that the court considered the arguments of the parties and exercised reasoned judgment.

Fry also challenges the substantive reasonableness of his sentence, a matter we review under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Fry complains that his sentence was greater than necessary to achieve the sentencing purposes set forth in § 3553(a)(2) and that the sentence constituted a clear error of judgment.

At sentencing, the court found that Fry was responsible for a total loss of approximately $130 million inflicted on at least forty-four victims. The court found several aggravating circumstances: that Fry was an organizer or leader of extensive criminal activity, USSG § 3B1.1(a), that he obstructed justice by lying to the Securities and Exchange Commission during its investigation, *id.* § 3C1.1, that he committed the offense as a registered broker or investment adviser, *id.* § 2B1.1(b)(19), and that a substantial part of the fraudulent scheme was committed from outside the United States through a fund that was based in Bermuda. *Id.* § 2B1.1(b)(10)(B). Fry scored in criminal history category II based on a prior conviction for driving while intoxicated and his commission of the instant offense while on probation. *Id.* § 4A1.1(c)-(d).

The court computed an advisory guideline sentence of 1440 months' imprisonment, but varied downward considerably and arrived at a final sentence of 210 months. Where a court sentences the defendant below the advisory range, it is unlikely that the court abused its discretion in not varying downward still further. *United States v. McKanry*, 628 F.3d 1010, 1022 (8th Cir. 2011). Here, the court gave ample reasons, outlined above, why a substantial term of imprisonment was warranted by the circumstances of the offense and the statutory factors. There was no abuse of discretion in selecting a term of 210 months.

Fry augments his contention by comparing his sentence with those of other participants in the Petters scheme. Most courts say that the statutory direction to avoid unwarranted sentence disparities, *see* 18 U.S.C. § 3553(a)(6), refers to *national* disparities, not differences among co-conspirators. *See United States v. Grigsby*, 692 F.3d 778, 792 (7th Cir. 2012); *United States v. Ivory*, 532 F.3d 1095, 1107 (10th Cir. 2008); *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008); *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007); *United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007); *United States v. Mueffelman*, 470 F.3d 33, 40-41 (1st Cir. 2006); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). This court once granted relief based on a comparison of co-conspirators, but that decision is necessarily limited to the "unusual circumstances" presented there: an "extreme disparity" in sentencing between similarly situated conspirators, and a consolidated appeal involving both conspirators that permitted a remand for resentencing of both parties. *See United States v. Lazenby*, 439 F.3d 928, 934 (8th Cir. 2006). When a single defendant asserts on appeal that a similarly situated co-conspirator was sentenced differently, and both sentences are within the range of reasonableness, there is no principled basis for an appellate court to say which defendant received the "appropriate" sentence. *McDowell*, 676 F.3d at 733.

In any event, disparate sentences among *dis*similar defendants are not unwarranted. The four comparators proffered by Fry pleaded guilty and accepted responsibility, thus earning leniency that justified differential treatment. They also cooperated with the government, another factor that warranted favorable consideration in their sentences. The court reasonably could have determined that Fry's offense conduct was more serious than the others. He was convicted on nine counts of fraud, as compared to four each for Prevost and Harrold, and one each for Reynolds and Bell. There was a basis to conclude that Fry developed elements of the fraud scheme that were then employed by the others. Unlike the comparators, Fry also was convicted of making false statements to the Securities and Exchange Commission, a factor that the district court cited in explaining why a substantial term

-13-

of imprisonment was appropriate.  We are not convinced by comparisons to other participants in the Petters scheme that Fry's sentence was substantively unreasonable.

*     *     *

For the foregoing reasons, the judgment of the district court is affirmed.

BRIGHT, Circuit Judge, dissenting.

I concur with respect to the majority's decision denying Defendant-Appellant James Fry's (Fry) claim under the Double Jeopardy Clause of the Fifth Amendment because of the absence of "good cause" for failing to make a timely challenge.  But I dissent as to Fry's 210-month (17½-year) heavy sentence.  In my view, Fry's sentence lacks a proper legal basis and is, instead, based solely on the personal opinion of the sentencing judge without a proper analysis under 18 U.S.C. § 3553(a).

Many courts and commentators state the Guidelines related to fraud convictions do not present a reasonable starting point for sentencing.[2]  See, e.g.,

---

[2]This is yet another example that "our sentencing system is broken and a new approach must be taken." United States v. Noriega, 760 F.3d 908, 912 (8th Cir. 2014) (Bright, J., concurring) (citing United States v. Stokes, 750 F.3d 767, 772-73 (8th Cir. 2014) (Bright, J., concurring); United States v. Hively, 61 F.3d 1358, 1363-66 (8th Cir. 1995) (Bright, J., concurring)).  Former Attorney General Eric Holder articulated a need to correct the broken sentencing system with regard to non-violent drug crimes as recently as 2013.  See Eric Holder, Attorney General of the United States, United States Department of Justice, Remarks at the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013), available at http://www.justice.gov/iso/opa/ag/speeches/2013/ag–speech–130812.html. The need for change in our sentencing system is evident.  But until reforms come to the Guidelines and other sentencing provisions are enacted, sentencing judges must be especially mindful that the sentences imposed are commensurate with the underlying crime.  Moreover, in fraud convictions especially, a sentencing judge should rely on

-14-

United States v. Watt, 707 F. Supp. 2d 149, 151 (D. Mass. 2010) ("The Guidelines were of no help; if not for the statutory maximum, the Guidelines . . . would have called for a sentence of life imprisonment."); United States v. Adelson, 441 F. Supp. 2d 506, 510, 515 (S.D.N.Y. 2006) (finding the Guidelines in a securities-fraud prosecution were "patently absurd on their face" due to the " 'piling-on' of points for which the guidelines have frequently been criticized"); Andrew Weissmann & Joshua A. Block, White-Collar Defendants and White-Collar Crimes, 116 Yale L.J. Pocket Part 286, 286 (2007) (stating the "Guidelines for fraud and other white-collar offences are too severe" and are greater than "necessary to satisfy . . . traditional sentencing goals").  This case is no different.  The computed advisory Guideline sentence for Fry's crimes was 1440 months' (120 years') imprisonment—a life sentence, and then some, for a 60-year-old defendant.  The sentencing judge recognized, as would almost every federal sentencing judge, that such a Guideline sentence was greatly excessive for Fry's crimes.  Thus, the sentencing judge here appropriately disregarded the advisory Guideline range.  See Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) (holding a sentencing judge cannot "presume that the Guideline range is reasonable" and must depart from the Guideline range when "the justification is sufficiently compelling to support the degree of the variance").

Because of the lack of guidance provided by the Guidelines, the sentencing judge was left to fashion a sentence under section 3553(a).[3]  See id. at 49-50, 128 S.

the obligations articulated in 18 U.S.C. § 3553(a) to ensure a sentence is fair.  United States v. Spencer, 700 F.3d 317, 326 (8th Cir. 2012) (Bright, J., dissenting) (concluding a thorough analysis of the section 3553(a) factors "is especially [important] in areas like fraud, where the guidelines have been consistently and repeatedly disregarded by sentencing judges").

[3] 18 U.S.C. § 3553(a) provides that a court "shall impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing. (Emphasis added).  To determine the proper sentence, a sentencing judge is required

to consider:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed—

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    the kinds of sentences available;

    (4)    the kinds of sentence and the sentencing range established for—

        (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

            (i)    issued by the Sentencing Commission pursuant to [28 U.S.C. § 994(a)(1)], subject to any amendments made to such guidelines by act of Congress . . . ; and

            (ii)    that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

        (B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to [28 U.S.C. § 994(a)(3)], taking into account any amendments made to such guidelines or policy statements by act of Congress . . . ;

    (5)    any pertinent policy statement—

        (A)    issued by the Sentencing Commission pursuant to [28 U.S.C. § 994(a)(2)], subject to any amendments

Ct. 586, 169 L. Ed. 2d 445; Adelson, 441 F. Supp. 2d at 515 ("But where, as here, the calculations under the guidelines have so run amok that they are patently absurd on their face, a Court is forced to place greater reliance on . . . section 3553(a)."). But section 3553(a) does not impart upon a sentencing judge "unlimited discretion to impose a sentence without some proper basis." United States v. Spencer, 700 F.3d 317, 325 (8th Cir. 2012) (Bright, J., dissenting). Section 3553(a) requires more than "a mechanical recitation that [a] sentence complies with the requirements of [section] 3553(a)." Id. at 326. Instead, especially when the Guidelines do not apply, sentencing judges should be required to "engage in a meaningful analysis of the [section] 3553(a) factors" in order for a sentence to be upheld by this Court. Id. at 328.[4]

The Supreme Court states that when a sentencing judge makes a departure from the Guidelines range, the sentencing judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Gall, 552 U.S. at 50, 128 S. Ct. 586, 169 L. Ed. 2d 445; see also Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he

---

> made to such policy statement by act of Congress . . . ; and
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

[4]I have repeatedly urged the members of this Court to change our precedent that sentencing judges are not required to make specific findings on the record about each section 3553(a) factor. See Spencer, 700 F.3d at 326 (Bright, J., dissenting).

. . . has a reasoned basis for exercising his own legal decisionmaking authority."). Here, the sentencing judge failed to adequately explain his sentence in a way that allows for meaningful review by this Court.

As previously noted, the sentencing judge imposed a 210-month (17½-year) sentence while failing to analyze any of the section 3553(a) factors except the "nature and circumstances of the offense." See 18 U.S.C. § 3553(a)(1). In so doing, the sentencing judge imposed a much harsher sentence than received by other individuals involved in the same fraudulent scheme. Most notably, the same sentencing judge imposed a 60-month (5-year), 72-month (6-year), 90-month (7½-year), and 130-month (almost 11-year) sentence on 4 other members of the same fraudulent scheme without meaningfully explaining why Fry's crime warranted a more serious punishment. In the absence of an explicit analysis of the section 3553(a) factors, this Court is left guessing as to the reasoning and motives of the sentencing judge for imposing this punishment. Thus, I would hold the sentencing judge was required, and failed, to hand down a "well-reasoned sentence, and to do so in a fashion that demonstrated that the defendant received the individual consideration due to him under [section] 3553(a)." See Spencer, 700 F.3d at 328-29 (Bright, J., dissenting). I would, therefore, vacate Fry's sentence, reverse, and remand requiring the sentencing judge to provide a reasoned analysis that allows for meaningful review by this Court.

Fry also makes a compelling argument that we should presume the sentencing judge imposed a vindictive sentence. Fry asserts that vindictiveness should be inferred because his sentence is significantly higher than other similarly-situated defendants who did not exercise their right to trial. To support this claim, Fry cites United States v. Mazzaferro, 865 F.2d 450 (1st Cir. 1989) and United States v. Capriola, 537 F.2d 319 (9th Cir. 1976) (per curiam), holding limited, United States v. Hall, 778 F.2d 1427 (9th Cir. 1985) (limiting Capriola holding to cases where an

individual is "penalized for exercising [his/her] right to stand trial").[5]  In both cases,

_____

[5]The majority dismisses the persuasive authority of both <u>Mazzaferro</u> and <u>Capriola</u>, concluding the Supreme Court's analysis in <u>Alabama v. Smith</u>, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989) "superseded" the reasoning in both decisions.  Yet, neither court has overruled its decision post-<u>Smith</u>.  <u>See, e.g.</u>, <u>Correia v. Hall</u>, 364 F.3d 385, 391 n.5 (1st Cir. 2004) (citing <u>Mazzaferro</u> for the proposition that when the district court is silent with regard to the reason for a disparity in sentences, the court "cannot rule out the possibility that the sentence was imposed in retaliation for [defendant's] insistence to stand trial" (alteration in original) (citation omitted) (internal quotation marks omitted)); <u>United States v. Monroe</u>, 943 F.2d 1007, 1017-18 (9th Cir. 1991) (while noting the Guidelines may make the <u>Capriola</u> decision unnecessary, the <u>Capriola</u> decision still applies to "situation[s] in which the defendant's constitutional right to stand trial is implicated" and requires a sentencing judge to give "reasons to support [a] disparity").  Moreover, in a case where the sentencing judge applied the Guidelines with "specific findings," this Court held <u>Mazzaferro</u> was inapplicable because the district court properly gave a reason for the differential—not because <u>Mazzaferro</u> had been overruled by <u>Smith</u>.  <u>United States v. Thompson</u>, 51 F.3d 122, 126-27 (8th Cir. 1995).

Most importantly, however, I disagree with the majority that the reasoning in <u>Mazzaferro</u> and <u>Capriola</u> is inconsistent with the Supreme Court's holding in <u>Smith</u>.  In <u>Smith</u>, the Supreme Court "clarified that a presumption of vindictiveness only arises where there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority."  <u>United States v. Anderson</u>, 440 F.3d 1013, 1015-16 (8th Cir. 2006) (quoting <u>Smith</u>, 490 U.S. at 799, 109 S. Ct. 2201, 104 L. Ed. 2d 865) (internal quotation marks omitted).  In both <u>Mazzaferro</u> and <u>Capriola</u>, the courts relied on a number of factors in determining a sentence may have been vindictive—not just that the sentence was longer.  865 F.2d at 460 (relying on (1) the judge failed to articulate a reason for the disparity; (2) the defendant played a minor role in the crime; (3) other defendants had a more extensive criminal history; and (4) the sentencing disparity was 10 years); 537 F.2d at 320 (relying on (1) the large disparity in sentences; (2) the judge failed to articulate a reason for the disparity; (3) there was insufficient information for the court to analyze whether vindictiveness occurred).  In so doing, the courts' main issue was the sentencing judge's failure to articulate the reason for the disparity in sentences.  <u>Mazzaferro</u>, 865 F.2d at 460; <u>Capriola</u>, 537 F.2d at 320.  Because of the absence of

-19-

the appellate court remanded for resentencing when the sentencing judge failed to give any reason for a sentencing differential between similarly-situated defendants. Mazzaferro, 865 F.2d at 460; Capriola, 537 F.2d at 320-21. Both courts reasoned that, absent an meaningful explanation for a substantial disparity in sentences between similarly-situated defendants, the "appearance of retaliation," Mazzaferro, 865 F.2d at 460, was sufficient to require resentencing to preserve the "appearance of judicial integrity and impartiality," Capriola, 537 F.2d at 321.

Remand in cases like Mazzaferro and Capriola is appropriate because, in the absence of some inference of vindictiveness when a sentencing judge imposes disparate sentences among co-defendants without explanation, "retaliatory motivation [is] . . . extremely difficult to prove in any individual case." North Carolina v. Pearce, 395 U.S. 711, 725 n.20, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). Proving causation is especially difficult, in circumstances such as this, where a judge can point to a possible legitimate reason for the decision. See, e.g., Crawford-El v. Britton, 523 U.S. 574, 584-85, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998) (stating that "an official's state of mind is easy to allege and hard to disprove" in context of retaliation claim against prison official (internal quotation marks omitted)). Thus, when a judge fails to provide any reason for imposing disparate sentences between similarly-situation individuals, the only relief that can be provided to a defendant is to infer some form of vindictiveness from the absence of that analysis.

The disparity in sentences between Fry and other members of the fraudulent scheme should concern this Court. The Supreme Court has repeatedly held that an individual cannot be punished for exercising a constitutional right. See, e.g.,

---

information for the appellate court to review, there was a "reasonable likelihood" the sentence was vindictive, such that remand for resentencing was appropriate. Smith is not inconsistent with the holding that a failure to articulate a reason for a large sentencing disparity creates a "reasonable likelihood" that the sentencing judge was vindictive.

Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . . [and] to penalize a person's reliance on his legal rights is 'patently unconstitutional.' " Id., 98 S. Ct. 663, 54 L. Ed. 2d 604 (citations omitted). Further, this Court has held "that whether a defendant exercises his constitutional right to trial by jury to determine his guilt or innocence must have no bearing on the sentence imposed." Hess v. United States, 496 F.2d 936, 938 (8th Cir. 1974).

Here, there is anecdotal evidence that Fry was given a heavier sentence because he exercised his right to trial by jury. The anecdotal evidence comes in the form of lighter sentences imposed by the same judge on individuals involved in the same fraudulent scheme who elected not to exercise their right to trial by jury. Without a well-reasoned analysis for this disparity by the sentencing judge, we have little, if any, evidence to determine whether vindictiveness actually occurred. We also place Fry in the precarious position of attempting to prove vindictiveness when, I believe, we should await a more robust analysis by the sentencing judge before reaching the issue.

I add another observation to the ruling in this case. Using poker verbiage, the majority gives prosecutors yet another "hole card"[6] to manipulate defendants out of exercising their constitutional right to trial. See, e.g., The Kings of the Courtroom: How Prosecutors Came to Dominate the Criminal-Justice System, Economist, Oct. 4, 2014, at 33-34 (noting some of the ways prosecutors have "accumulated so much power that abuse is inevitable"). The next time a defendant contemplates asserting his/her constitutional right to a trial, a prosecutor need only remind the defendant of the vast difference in sentences between the co-conspirators in this case to persuade

---

[6]A "hole card" is defined as "a hidden advantage or undisclosed resource." Webster's New World College Dictionary 680 (4th ed. 2007).

a defendant that more severe consequences will be imposed should s/he exercise his/her rights.

In sum, the heavy sentence imposed upon Fry was made without reference to any Guideline and without a thorough analysis under section 3553(a). Without a reasoned analysis under section 3553(a), we are not left with a sufficient explanation of Fry's sentence to allow for "meaningful appellate review." See Gall, 552 U.S. at 50, 128 S. Ct. 586, 169 L. Ed. 2d 445. In the absence of this analysis, I would vacate Fry's sentence, reverse, and remand to the sentencing judge for further analysis of the section 3553(a) factors.

_____