# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-2725

———————————————

United States of America

*Plaintiff - Appellee*

v.

Jay Phillip Flynn, also known as Nathan Johnson

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota - St. Paul

——————————

Submitted: May 31, 2016
Filed: July 28, 2016
[Unpublished]

——————————

Before SMITH, BEAM, and KELLY, Circuit Judges.

——————————

PER CURIAM.

Jay Phillip Flynn pleaded guilty pursuant to a plea agreement to mail fraud, in violation of 18 U.S.C. § 1341. The district court[1] sentenced Flynn to 52 months'

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

imprisonment—11 months above the top of the applicable Guidelines range. On appeal, Flynn argues that his sentence is substantively unreasonable. We affirm.

## I. *Background*

Flynn and his two codefendants, through artifice, defrauded the elderly of coins and precious metals. Flynn defrauded 18 victims between the ages of 67 and 89[2] in a total amount of $344,828.02. In September 2014, Flynn was charged with one count of mail fraud, in violation of 18 U.S.C. § 1341. He pleaded guilty pursuant to a plea agreement on October 17, 2014.[3] The plea agreement calculated Flynn's applicable Guidelines range to be 33 to 41 months' imprisonment based on a total offense level of 18 and a criminal history category of III. The total offense level included a base offense level of 7, a 12-level enhancement for a loss amount of $339,000, a 2-level enhancement for the involvement of more than 10 victims, and a 3-level reduction for acceptance of responsibility.

The presentence investigation report (PSR) agreed with the parties' Guidelines calculation with one exception. The PSR determined that Flynn was responsible for $760,000 of fraud, resulting in a 14-level loss enhancement. The PSR calculated a total offense level of 20 and a Guidelines range of 41 to 51 months' imprisonment. In calculating the loss amount, the PSR included about $340,000 of fraud for which Flynn was primarily responsible and $420,000 of fraud for which one of his codefendants, Robert Earl Gundy, was primarily responsible. The government and Flynn objected to the PSR's loss enhancement to the extent that it included the fraud for which Gundy was primarily responsible. During sentencing, the government explained why it used the $340,000 loss amount instead of the $760,000 loss amount.

---

[2]Two of the victims' ages—G.R. and R.S.—are unknown.

[3]Prior to successfully entering his guilty plea on that date, Flynn had previously shown up for a change-of-plea hearing on October 9, 2014, with cocaine in his system. The district court detained Flynn pending trial or guilty plea and sentencing.

The district court sustained Flynn's objection to the amount of loss. In doing so, the court noted that "[b]ecause the government has joined with Mr. Flynn in objecting to the amount of loss, the government has obviously not presented evidence of any additional loss beyond that to which the parties agree." The court found a loss amount of $344,828.02. As a result, the court imposed a 12-level enhancement for the amount of loss instead of the PSR's recommended 14-level enhancement. Thereafter, the court granted the government's motion for an additional one-level reduction for acceptance of responsibility. The court calculated a total offense level of 18 and a criminal history category of III, resulting in a Guidelines range of 33 to 41 months' imprisonment. Both parties agreed with this Guidelines range. Flynn sought a 33-month sentence, and the government requested a 41-month sentence.

The district court sentenced Flynn to 52 months' imprisonment and ordered him to pay restitution in the amount of $324,949.77 to the victims identified in the PSR. In announcing its sentence, the court stated that it had reviewed the PSR and letters from Flynn's relatives. The court also "dictate[d] the reasons for the sentence," explaining that it had "carefully considered all of the factors described in 18 U.S.C. Section 3553(a), including the need for the sentence to be sufficient, but not greater than necessary, to comply with the purposes set forth in Section 3553(a)(2)." "Having considered all of the Section 3553(a) factors—including the nature and circumstances of the offense and the history and characteristics of the defendant," the court found that the 52-month sentence

> is sufficient, but not greater than necessary, to reflect the seriousness of Mr. Flynn's offense and to provide just punishment for that offense; to deter Mr. Flynn from committing crimes in the future; to deter others from committing this or similar crimes in the future; to protect the public from Mr. Flynn; and to provide Mr. Flynn with needed care, treatment, and training.

The court additionally found that the 52-month sentence

> is necessary to avoid unfair disparities between Mr. Flynn's sentence and the sentences of those who were involved in the same scheme, to avoid unwarranted disparities between Mr. Flynn's sentence and the sentences of defendants with similar records who have been found guilty of similar conduct, and to provide restitution to the victims of Mr. Flynn's offense.

The court recognized that the 52-month sentence was an upward variance but found such a variance "necessary to meet the sentencing objectives of Section 3553(a)." The court then offered three justifications for the 11-month variance from the top of the Guidelines range. First, "Flynn committed a very serious crime" that the court found to be "particularly brazen and cruel" given that Flynn "targeted the elderly." The court commented that being defrauded "would be stressful for anyone, but it is particularly devastating for the elderly"; therefore, the court found that "[a]n upward variance is necessary to reflect the seriousness of Mr. Flynn's offense and to provide just punishment for that offense."

Second, the court found "an upward variance . . . necessary to deter Mr. Flynn from committing crimes in the future and to protect the public from him." The court cited Flynn's "lengthy criminal record," which "includes felony convictions for armed robbery, drug trafficking, and drug possession, as well as many misdemeanor convictions, including misdemeanor convictions for check forgery and domestic assault." The court found that the upward variance would deter Flynn "from continuing to commit crimes." The court noted that Flynn's past sentences had failed to deter him and also pointed to Flynn's history of probation violations, including Flynn's showing up to the first change-of-plea hearing with cocaine in his system. The court determined that "[a] long sentence will have a better chance of deterring Mr. Flynn—and, at a minimum, it will give the public additional protection from him."

Finally, the court found "[a]n upward variance . . . necessary to provide general deterrence." The court found Flynn's case "illustrative" of how "white-collar criminals are underpunished and thus underdeterred." According to the court, Flynn had "stole[n] almost $350,000 from the elderly—and . . . did so in a cold and calculating way over a period of several months—and yet the Sentencing Guidelines recommend[ed] a sentence as low as 33 months."

In summary, the court found no "compelling reason to give Mr. Flynn a break." The court pointed out that "Flynn came from a good family and he had a comfortable upbringing." While the court acknowledged that Flynn's drug "addiction did play a role in his crime," it also noted that Flynn "has received inpatient treatment three times, to no apparent effect." The court also considered Flynn's children, stating that "neither Mr. Flynn nor his wife has custody of those children because of their drug abuse" and that "Mr. Flynn owes over $200,000 in back child support." The court found it "hard to accept the argument that Mr. Flynn should receive a short prison sentence so that he can be more involved in the lives of his children."

## II. *Discussion*

On appeal, Flynn argues that his 52-month above-Guidelines sentence is substantively unreasonable because the district court failed to consider the issues of sentencing disparity and Flynn's personal circumstances at the time of the offense. Specifically, Flynn notes that one of his codefendants received a 41-month prison sentence, while another codefendant, although receiving a longer sentence, was sentenced within the Guidelines range. According to Flynn, the court failed to address what disparity would occur if the court imposed a Guidelines sentence. He argues that the fraud that his codefendants committed and their victims are similar to his own; therefore, he maintains that the court failed to account for sentencing disparity. Finally, he argues that the court minimized Flynn's admitted addiction to controlled substances by stating that previous treatment had no apparent effect on him.

We review the reasonableness of the district court's sentence for abuse of discretion, and a district court abuses its discretion only when it "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment."

*United States v. Bland*, 638 F. App'x 548, 549 (8th Cir. 2016) (unpublished per curiam) (quoting *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)).

Here, Flynn acknowledges that the district court considered the need to avoid unwarranted sentencing disparities but contends that the court erroneously assessed the disparity. The district court expressly found that the sentence was "necessary to avoid unfair disparities between Mr. Flynn's sentence and the sentences of those who were involved in the same scheme." Flynn argues that his sentence is too high compared to codefendant Robert Gundy's 41-month sentence. Flynn's argument fails. Gundy was sentenced *after* Flynn, "and the court at [Flynn's] sentencing could not have discussed sentences that were not yet imposed." *See United States v. Fry*, 792 F.3d 884, 891–92 (8th Cir. 2015) (citation omitted). As to his other codefendant, Tory Hughes, Flynn acknowledges that Hughes received a *higher* sentence—71 months—for executing a similar mail fraud scheme. The record reflects that the district court adequately considered this factor and that Flynn was not similarly situated to his codefendants. *See United States v. Plaza*, 471 F.3d 876, 880 (8th Cir. 2006) ("[When codefendants] are not similarly situated, . . . the district court does not need to sentence the[m] . . . to the same length of imprisonment to avoid an unwarranted sentencing disparity."). As the government points out, the district court based Flynn's sentence on Flynn's unique offender characteristics, including his criminal history.

Flynn also concedes that the district court considered the nature and seriousness of the offense but objects to the district court's view of white collar crimes. The

district court stated, "An upward variance is also necessary to provide general deterrence. As a general matter, I believe that white-collar criminals are underpunished and thus underdeterred." The district court also noted that Flynn "stole almost $350,000 from the elderly—and . . . did so in a cold and calculating way over a period of several months—and yet the Sentencing Guidelines recommend[ed] a sentence as low as 33 months." According to Flynn, the Guidelines were based on careful study and empirical evidence; therefore, the court should have followed these Guidelines. But the Supreme Court's "post-*Booker* decisions make clear that a district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the [Sentencing] Commission's views." *Pepper v. United States*, 562 U.S. 476, 501 (2011) (citation omitted). Here, the district court highlighted that Flynn targeted the elderly, which the court concluded made the Guidelines range particularly unsuitable for his offense.

Finally, Flynn also admits that the district court addressed his drug abuse and the role that it played in the offense but argues that the court minimized Flynn's admitted addiction to controlled substances by stating that previous treatment had no apparent effect on him. But Flynn has not shown how the district court's factual conclusion was false; that is, that Flynn had previously successfully completed treatment. And, it was at Flynn's request that the court recommended him for the Residential Drug Abuse Program while in prison. The district court added that it was imposing a three-year term of supervised release, in part, because of Flynn's "severe addiction to drugs" and included in Flynn's supervised-release conditions that he get "treatment for his addictions."

For the aforementioned reasons, we hold that the district court did not abuse its discretion in sentencing Flynn to 52 months' imprisonment.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____