# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-2690

_____

United States of America,

*Plaintiff - Appellee*,

v.

Travis Charles Werkmeister, also known as Cheese,

*Defendant - Appellant*.

_____

No. 21-3709

_____

United States of America,

*Plaintiff - Appellee*,

v.

Rogelio Lemus Hernandez,

*Defendant - Appellant*.

_____

No. 21-3752

_____

United States of America,

*Plaintiff - Appellee*,

v.

Bobby Dean Robey, also known as Bobbey Dean Robey,

*Defendant - Appellant.*

_____

No. 21-3753

_____

United States of America,

*Plaintiff - Appellee,*

v.

Breanna Garcia,

*Defendant - Appellant.*

_____

No. 21-3924

_____

United States of America,

*Plaintiff - Appellee,*

v.

Jack Andrew Mazariegos-Galicia,

*Defendant - Appellant.*

_____

Appeals from United States District Court
for the Northern District of Iowa - Eastern

Submitted: October 17, 2022
Filed: March 14, 2023

Before COLLOTON, KELLY, and KOBES, Circuit Judges.

COLLOTON, Circuit Judge.

These consolidated appeals arise from a multi-defendant criminal case involving a conspiracy to distribute methamphetamine. All five appellants pleaded guilty to a conspiracy charge, and the district court[*] sentenced them to various terms of imprisonment. The appeals concern only the sentences imposed, and we conclude that there was no error.

I.

The conspiracy involved the distribution of methamphetamine in Iowa that was supplied by one Mario Hernandez. In 2016, Hernandez was deported from the United States to Mexico. From 2018 to 2020, he was a supplier of methamphetamine in the conspiracy charged in this case. He often coordinated drug transactions with members of the conspiracy using a Mexico-based phone number, and investigators believed that he resided in Mexico throughout the conspiracy. During the conspiracy, investigators seized significant amounts of methamphetamine from the conspirators in Iowa.

---

[*]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

In 2018, Travis Werkmeister began selling methamphetamine in Waterloo, Iowa, with Mario Hernandez as his supplier. Werkmeister's live-in girlfriend, Breanna Garcia, assisted him with various tasks, including selling methamphetamine and collecting money when Werkmeister was unavailable.

Bobby Robey played an intermediary role between Mario Hernandez and Werkmeister. Robey and Mario Hernandez coordinated the transportation of methamphetamine from southern Texas to Robey's home in Roland, Iowa. Robey then drove from Roland to Waterloo to distribute the methamphetamine to Werkmeister and other conspirators who resold it.

Rogelio Lemus Hernandez and Jack Mazariegos-Galicia transported methamphetamine from Texas to Iowa and collected drug proceeds from other conspirators on behalf of Mario Hernandez. They made approximately eight to ten trips to drop off methamphetamine with Werkmeister in Waterloo in exchange for money.

A grand jury charged the five appellants with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Each appellant pleaded guilty and was sentenced to terms of imprisonment as follows: Werkmeister, 346 months; Rogelio Lemus Hernandez, 192 months; Robey, 270 months; Garcia, 120 months; Mazariegos-Galicia, 151 months.

II.

Werkmeister, Robey, Lemus Hernandez, and Mazariegos-Galicia challenge the district court's imposition of a two-level increase under the sentencing guidelines for importation of methamphetamine. The guidelines require a two-level increase if "the offense involved the importation of . . . methamphetamine." USSG § 2D1.1(b)(5).

The district court found that the offense involved the importation of methamphetamine from Mexico. For Werkmeister, Robey, and Lemus Hernandez, the district court imposed the two-level increase after finding that the defendants knew the methamphetamine was imported from Mexico. The district court did not make a finding about Mazariegos-Galicia's knowledge, but concluded that if the offense involved importation, then the guideline applies whether or not the defendant knew about the importation. We review the district court's factual findings for clear error and its interpretation of the guidelines *de novo*. *United States v. Zech*, 553 F.3d 663, 666 (8th Cir. 2009) (per curiam).

Robey argues first that the district court clearly erred in finding that the conspiracy offense involved the importation of methamphetamine. He suggests that the conspiracy involved only the transportation of drugs from Texas to Iowa for distribution, and that a broker who was not involved in the conspiracy was responsible for importing the drugs from Mexico to Texas.

We conclude that the district court did not clearly err in finding that the conspiracy involved the importation of methamphetamine from Mexico. Because the offense involved large quantities of methamphetamine with a high level of purity, the court reasonably inferred that the drugs were coming directly from a "super lab" that produces methamphetamine. The court cited testimony from the government's lead investigative agent that super labs are located in Mexico, and that there are no known super labs in Texas or elsewhere in the United States. Mario Hernandez, the principal source of supply for the distributors in Iowa, had significant ties to Mexico: he had been deported to Mexico, and he used a Mexican phone number. The agent testified, without objection, that investigators identified a broker who was believed responsible for bringing methamphetamine from Mexico to Mario Hernandez in Texas. The court did not clearly err in finding that this broker was an unindicted member of the charged conspiracy with Mario Hernandez and the other conspirators in Iowa.

Even with a finding that the offense involved importation, the four defendants argue that the district court erred in applying the increase to them. Mazariegos-Galacia argues that the court erred in concluding that the guideline does not require knowledge of importation. The other three offenders challenge the district court's finding that they knew the methamphetamine was imported from Mexico.

The guideline provides for an increase if "the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals *that the defendant knew were imported unlawfully*." USSG § 2D1.1(b)(5) (emphasis added). The defendants argue that the word "knew" modifies the fact of importation. Applying basic rules of grammar, however, we conclude that the qualifying phrase—"that the defendant knew were imported unlawfully"—applies only to the importation of "listed chemicals" that are used to manufacture drugs. The word "were" is plural, and the drug types in the first clause are stated in the singular. Grammar does not allow an interpretation that says the offense involved the importation of *methamphetamine* that the defendant *knew were* imported. *United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012). The word "unlawfully" also would be redundant and unnecessary if it referred to the importation of methamphetamine, but it acquires meaning when applied to the importation of listed chemicals, some of which may be imported lawfully in certain circumstances. *See* 21 U.S.C. § 952(d). Accordingly, the increase applies whether or not a defendant knew that the offense involved importation of methamphetamine. For this reason, the district court correctly applied the increase to all four defendants, and it is unnecessary to consider whether the evidence supported a finding that three of them knew about the importation of drugs.

III.

Werkmeister also argues that the evidence was insufficient to support a finding that he played an aggravating role in the offense. The district court applied a three-

level increase on the ground that Werkmeister was a manager or supervisor in criminal activity that involved five or more persons. *See* USSG § 3B1.1(b).

The court found that Werkmeister held a supervisory role with respect to one Eric Melhus, and that he recruited a Jaime Becker into the conspiracy. The court cited evidence that Werkmeister gave direction to Melhus about who would be making deliveries to a storage shed that Melhus rented, and that Werkmeister specified the price and quantity of methamphetamine that Melhus should provide to customers. The court also found that Melhus contacted Werkmeister on another occasion to request instructions, and that Werkmeister gave him directions on how to proceed with activities of the drug organization. On that basis, the court found that Werkmeister was "giving direction to another member of the conspiracy," and that he played a "management role" in the conspiracy. The court also found that Werkmeister recruited Becker into the drug organization.

These findings are not clearly erroneous. The court relied on portions of the presentence report regarding Melhus to which Werkmeister did not object, so testimony on that issue was not necessary. Fed. R. Crim. P. 32(i)(3)(A). Becker testified that after her boyfriend went to jail for selling drugs, Werkmeister contacted her by telephone and said that she could work for him in the drug organization by selling methamphetamine. The court properly found that Werkmeister recruited Becker, because she testified that after her boyfriend went to jail, she "picked up his part" in the drug business when Werkmeister called her. Evidence that a defendant directed the criminal activities of another conspirator on one occasion, or that the defendant recruited a member into the conspiracy, is sufficient to support a finding of aggravating role in the offense. *See United States v. Bolden*, 622 F.3d 988, 991 (8th Cir. 2010) (per curiam).

Werkmeister next argues that his sentence is unreasonable due to a disparity between his sentence and that of co-conspirator Jorge Martinez-Garcia. The court sentenced Werkmeister to 346 months' imprisonment while Martinez-Garcia was sentenced to 135 months' imprisonment. We have considered alleged unwarranted disparity in sentencing between co-conspirators only in circumstances not present here—an "extreme disparity" in sentencing and "a consolidated appeal involving both conspirators that permitted a remand for resentencing of both parties." *United States v. Fry*, 792 F.3d 884, 892-93 (8th Cir. 2015); *see United States v. Lazenby*, 439 F.3d 928, 934 (8th Cir. 2006). Otherwise, "[w]hen a single defendant asserts on appeal that a similarly situated co-conspirator was sentenced differently, and both sentences are within the range of reasonableness, there is no principled basis for an appellate court to say which defendant received the 'appropriate' sentence." *Fry*, 792 F.3d at 893. In any event, Werkmeister and Martinez-Garcia were not similarly situated, so the alleged disparity is not unwarranted. Werkmeister was responsible for substantially more methamphetamine, played a larger role in the conspiracy, and presented a more serious criminal history. The court did not abuse its discretion in selecting the sentence.

## IV.

Robey challenges the district court's determination of his criminal history category under the sentencing guidelines. The court found that because Robey was a career offender under USSG § 4B1.1(a), his criminal history category was VI. Robey argues that the court should have placed him in category III based on a total of three criminal history points.

The applicable guideline provision states:

(b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense

level otherwise applicable, the offense level from the table in this subsection shall apply. *A career offender's criminal history category in every case under this subsection shall be Category VI.*

USSG § 4B1.1(b) (emphasis added). The offense level for Robey from the table in § 4B1.1(b) was 37. In Robey's case, however, the base level offense under § 2D1.1 based on his drug trafficking offense was 38, so the court applied the higher offense level of 38. Robey argues that because the court did not apply the offense level under the table in § 4B1.1(b), the entirety of § 4B1.1(b) is inapplicable, so the direction to apply criminal history category VI does not govern.

We reject this interpretation of the career offender guideline. Section 4B1.1(b) states that "[a] career offender's criminal history category in every case *under this subsection* shall be Category VI." USSG § 4B1.1(b) (emphasis added). Robey suggests that where the "otherwise applicable" offense level applies to a defendant, the case no longer arises "under this subsection," and the court must determine the criminal history category independently. As we understand the provision, however, a case falls "under" subsection (b) whenever a defendant is a career offender under subsection (a), § 4B1.1(a). Subsection (b) then directs the court how to determine the offense level. Sometimes the offense level will be determined by the table in the subsection; sometimes it will be derived from another offense guideline in Chapter 2. But either way, subsection 4B1.1(b) directs the court how to determine the offense level, and *the case* is thus one "under" that subsection. Because an offender's criminal history category is category VI "in every case under this subsection," the district court properly classified Robey in category VI. *See United States v. Gordon*, 838 F.3d 597, 603 (5th Cir. 2016).

V.

Garcia argues that the district court erred in not considering a sentence below the statutory minimum of 120 months' imprisonment based on 18 U.S.C. § 3553(f). That section provides that a district court may impose a sentence "without regard to any statutory minimum sentence," if the court finds five elements at sentencing, including that:

(1) the defendant does not have—

(A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

(B) a prior 3-point offense, as determined under the sentencing guidelines; and

(C) a prior 2-point violent offense, as determined under the sentencing guidelines.

18 U.S.C. § 3553(f)(1). A defendant must meet the conditions in all three subsections to satisfy § 3553(f)(1). *United States v. Pulsifer*, 39 F.4th 1018, 1022 (8th Cir. 2022), *cert. granted*, 2023 WL 2227657 (U.S. Feb. 27, 2023) (No. 22-340).

The district court found that Garcia had nine criminal history points, excluding all criminal history points resulting from a one-point offense. She also had a prior three-point offense. Therefore, she was ineligible under both subsections (A) and (B). Garcia suggests that she did not have a three-point offense under subsection (B), because the court scored three points for a theft offense that would have counted for only one point if she had not sustained a revocation of probation for that offense. *See* USSG §§ 4A1.1(a), 4A1.2(k). We see no merit to that argument, because the theft conviction was properly scored as a three-point offense. But Garcia also does not

dispute that she scored more than four criminal history points under subsection (A), even if the theft offense were not counted.

Garcia contends that the district court nonetheless erred by concluding that it could not "depart downward" and deem her eligible under § 3553(f) even though she did not meet the criteria under that subsection. She argues that the record supported a downward departure under USSG § 4A1.3(b)(1) because her placement in criminal history category VI over-represented the seriousness of her criminal history. She then reasons that because criminal history categories are based on criminal history points, a departure that reduces her criminal history category necessarily treats her as though she scored fewer criminal history points. On that basis, she contends that the district court could have deemed that she met the criteria under § 3553(f)(1) by treating her as though she did not have either a prior three-point offense under subsection (B) or more than four criminal history points under subsection (A).

This argument improperly conflates the district court's authority to depart below the advisory sentence recommended under the sentencing guidelines and the court's authority to sentence below a statutory minimum based on § 3553(f). That the district court may sentence a defendant under the guidelines as though she were placed in a lower criminal history category does not allow the court to avoid the statutory requirements of § 3553(f)(1). The court has no "departure" authority to ignore the strictures of § 3553(f)(1), and the Sentencing Commission does not have authority to modify the requirements imposed by Congress. The district court thus did not err in finding that Garcia was ineligible for relief under § 3553(f).

Garcia also disputes the district court's imposition of a special condition of supervised release that prohibits her from using alcohol and from entering any establishment that holds itself out to be a bar or tavern. We review the imposition of special conditions of supervised release under a deferential abuse-of-discretion standard. *United States v. Clower*, 54 F.4th 1024, 1028 (8th Cir. 2022). Special

conditions of supervised release must be "reasonably related" to the factors set forth in 18 U.S.C. §§ 3553(a)(1) and (a)(2)(B)-(D), and must not impose a "greater deprivation of liberty than is reasonably necessary" to serve the purposes of sentencing. 18 U.S.C. § 3583(d).

Where a defendant exhibits problems with substance abuse, a district court generally acts within its discretion by imposing a prohibition on the use of alcohol and the entry into alcohol-oriented establishments. *United States v. Forde*, 664 F.3d 1219, 1222-23 (8th Cir. 2012). Even where a defendant's history involves abuse of drugs rather than alcohol, we have said that a district court may recognize the threat of cross-addiction and respond by imposing a ban on alcohol use. *Id*. at 1224; *see United States v. Bell*, 915 F.3d 574, 577 (8th Cir. 2019).

In this case, the record establishes that Garcia suffers from a history of substance abuse. She engaged in underage drinking of alcohol at the age of sixteen. When she was twenty-two years old in 2009, she was arrested for attempting to steal three bottles of liquor from a local grocery store. In 2018, she was arrested for driving while intoxicated with a blood alcohol concentration almost twice the legal limit. Garcia used marijuana regularly from 2003 through 2020, and she used methamphetamine during those same years with intermittent periods of sobriety. She was treated for substance abuse in 2008 and 2012, and she informed the court in this case that she needed more substance abuse treatment. In light of Garcia's history, the district court did not abuse its discretion by imposing the special condition of supervised release relating to alcohol.

\*     \*     \*

The judgments of the district court are affirmed.

_____