COLLOTON, Circuit Judge.
A jury found John Anthony Spencer guilty of ten counts of wire fraud, in violation of 18 U.S.C. § 1343, and three counts of other fraud-related crimes. The district court[1] sentenced him to 125 months’ imprisonment and ordered him to pay $7,874,089.21 in restitution. Spencer challenges several of the district court’s evidentiary rulings and his sentence. We affirm.
I.
In spring 2005, Spencer began to work as a mortgage broker at Minnesota One, where he helped borrowers obtain mortgage financing. The evidence at trial showed that, beginning in September 2005, Spencer organized several fraudulent real estate transactions. After recruiting buyers to participate, Spencer and his staff at Minnesota One brokered mortgage loans by providing potential lenders with false information and fraudulent documents. *320 Spencer and his staff misrepresented to the lenders that the buyers would use the properties as primary residences, and submitted false employment, income, and asset information to the lenders. They also misled lenders by failing to disclose the presence of “silent second mortgages” on the properties. Spencer would inform a lender that a buyer was going to make a sizeable down payment on the property, but the funds were actually borrowed from a second lender. To create a pool of funds from which he could pay buyers and himself, Spencer inflated sale prices by providing fraudulent appraisals to the lenders. All of the buyers eventually defaulted on the fraudulently brokered loans.
A grand jury indicted Spencer on ten counts of wire fraud, in violation of 18 U.S.C. § 1343. He was also charged with one count each of bank fraud, in violation of 18 U.S.C. § 1344, conspiracy to commit wire and bank fraud, in violation of 18 U.S.C. § 371, and money laundering in violation of 18 U.S.C. § 1957.
Before trial, the government moved in limine to introduce the testimony of William Hogle, Spencer’s income-tax preparer for the years 2005 and 2006. The government sought to have Hogle testify that Spencer provided him with documents that mischaracterized the fraud proceeds as loans and a gift from a relative. The purpose of this evidence was to show that Spencer had attempted to conceal the source of his income and was adept at fabricating documents. Because Hogle is both a lawyer and a certified public accountant, Spencer moved to block his testimony by asserting an attorney-client privilege. The district court denied Spencer’s motion on the ground that Hogle was not acting in his capacity as an attorney when preparing Spencer’s income tax returns.
Pursuant to Federal Rule of Evidence 104(b), the government also moved in limine for a ruling that would allow Kelly Boedecker, a Senior Credit Risk Officer with Bank of America, to testify regarding evidence that would be adduced later in the trial. The district court allowed the government to present Boedecker, but expressed an intent to give a cautionary instruction when she testified. When Boedecker appeared, however, the district court did not give the instruction.
The jury found Spencer guilty on all counts. Under the advisory guidelines, based on an offense level of 39 and criminal history category I, Spencer’s recommended sentencing range was 262 to 327 months’ imprisonment. The district court varied downward substantially and sentenced Spencer to 125 months’ imprisonment. The court also ordered Spencer to pay restitution in the amount of $7,874,089.21. Spencer now appeals.
II.
A.
Spencer first argues that the district court erred in allowing Hogle to testify. The district court determined that the attorney-client privilege did not apply because Hogle and Spencer did not have an attorney-client relationship. We review this finding for clear error. See United States v. Rouse, 410 F.3d 1005, 1010 (8th Cir.2005).
The attorney-client privilege protects confidential communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client. United States v. Horvath, 731 F.2d 557, 561 (8th Cir. 1984). But when an attorney acts in other capacities, such as a conduit for a client’s funds, as a scrivener, or as a business advisor, the privilege does not apply. Id. In one case, this court held that when an attorney prepared a client’s income tax *321 returns, the attorney’s function was that of “a scrivener,” and no attorney-client relationship was established. Canaday v. United States, 354 F.2d 849, 857 & n. 7 (8th Cir.1966).
At an evidentiary hearing held outside the presence of the jury, Hogle testified that he provided no legal advice to Spencer, and that he had done nothing for Spencer “other than what [he] would normally deal with in preparing a tax return.” Hogle explained that he does not hold himself out as an attorney, but rather “practice^] as a CPA.” Based on this testimony, the district court determined that Hogle acted in his capacity as a CPA when he assisted Spencer with his taxes, and that the two did not have an attorney-client relationship.
Spencer argues that to establish an attorney-client relationship, he need show only that he submitted confidential information to Hogle with the reasonable belief that Hogle was acting as his attorney. See United States v. Stiger, 413 F.3d 1185, 1196 (10th Cir.2005); cf. In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 923 (8th Cir.1997). He claims that he approached Hogle seeking not only to have his income taxes prepared, but also to receive tax-planning advice, and that he was therefore seeking legal advice. See United States v. Willis, 565 F.Supp. 1186, 1190 (S.D.Iowa 1983).
Assuming for the sake of analysis that Spencer’s legal theory is sound, the district court did not clearly err in finding that it lacked factual support. Spencer presented no evidence that he sought tax-planning advice from Hogle or that he believed that an attorney-client relationship had been formed. Spencer’s argument centered on testimony from Hogle that he refers to himself as “William G. Hogle, CPA, JD, MBT” in correspondence, and that he never documented telling Spencer that he was acting as CPA and not as an attorney. Hogle unequivocally denied providing legal advice, and the district court’s finding of no attorney-client relationship was not clearly erroneous. The court properly admitted Hogle’s testimony.
B.
Spencer next alleges errors in the admission of Boedecker’s expert testimony. He first complains that the probative value of Boedecker’s testimony was substantially outweighed by a danger of unfair prejudice, and that the court should have excluded the testimony based on Federal Rule of Evidence 403. Spencer raised no such objection in the district court, and there was no plain error in admitting the testimony.
Federal Rule of Evidence 702(a) permits expert testimony if a witness’s specialized knowledge “will help the trier of fact to understand the evidence or to determine a fact in issue.” See United States v. Johnson, 28 F.3d 1487, 1496-97 (8th Cir.1994). Mortgage underwriting standards are beyond the experience of the typical juror. Boedecker described forms commonly used in the mortgage loan application and underwriting process, and she explained why certain information provided by the buyer — such as whether the home will be a primary residence and whether the buyer is making a down payment from his own funds — is important to the lender. Her testimony helped the jury to understand documents with which they may not have been familiar, and it gave them a basis for determining whether Spencer’s alleged misrepresentations were material.
We reject Spencer’s contention that Boedecker’s testimony usurped the jury’s role as factfinder, and thereby created unfair prejudice. Boedecker answered queries about specific loans brokered by Spencer, and she responded to hypothetical *322 questions about the significance to the underwriter of various misrepresentations on a loan application. But she did not express an opinion about whether Spencer had the requisite mens rea to commit fraud, see Fed.R.Evid. 704(b), or whether Spencer’s actions were fraudulent. She simply provided testimony “that, when combined with other evidence, might imply or otherwise cause a jury to infer” that Spencer committed fraud. United States v. Liner, 435 F.3d 920, 924 (8th Cir.2006) (internal quotation omitted). The testimony was not unfairly prejudicial, and there was no plain error in admitting Boedecker’s testimony.
Spencer also complains that the district court failed to issue a cautionary instruction regarding Boedecker’s testimony. The court stated at the pretrial conference that it would instruct the jury that it “should keep in mind that [Boedecker] is testifying about facts that have not yet been proved, and if they’re not proved, you are to disregard her testimony entirely.” As it turned out, the court did not give that instruction, but Spencer never objected, and the omission was not plain error. All of the exhibits about which Boedecker testified were admitted into evidence before she took the stand. The court’s proposed limiting instruction was therefore unnecessary.
C.
With respect to the sentence imposed, Spencer makes no meaningful argument of procedural error,[2] but he does challenge the substantive reasonableness of the sentence. The district court sentenced Spencer to 125 months’ imprisonment—137 months below the bottom of the advisory guideline range of 262 to 327 months’ imprisonment. We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard, Gall, 552 U.S. at 41, 128 S.Ct. 586, and “where a district court has sentenced a defendant below the advisory guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further.” United States v. Moore, 581 F.3d 681, 684 (8th Cir.2009) (per curiam) (internal quotation omitted). We conclude that the district court reasonably rejected Spencer’s argument that his difficult upbringing and the sentences given to other white collar criminals required an even shorter sentence.
Spencer next challenges the district court’s restitution order. The Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663 et seq., requires defendants convicted of a crime “committed by fraud or deceit” to make restitution to the victim of the offense in the full amount of each victims’ loss. Id. §§ 3663A(e)(1)(A)(ii), 3664(f)(1)(A). The statute defines a “victim” as “a person directly and proximately harmed as a result of the commission of an offense ... including, in the case of an offense that *323 involves as an element a scheme ... any person directly harmed by the defendant’s criminal conduct in the course of the scheme.” Id. § 3663A(a)(2). The district court ordered that Spencer pay restitution in the amount of $7,874,089.21, the same loss amount that it calculated for purposes of the advisory guideline range. We review the district court’s finding on the amount of restitution for clear error. United States v. Frazier, 651 F.3d 899, 903 (8th Cir.2011).
Spencer argues that the district court erred in ordering some or all of the restitution because financial difficulties unrelated to his fraudulent scheme caused the losses of the banks. Spencer asserts that the downturn in the real estate market and a national recession were the principal reason that buyers could not repay their loan obligations.
The MVRA requires a defendant to pay restitution to a victim who is “directly and proximately harmed as a result of’ fraud. 18 U.S.C. § 3663A(a)(2). We conclude that the district court did not clearly err in finding that Spencer’s acts directly and proximately caused the losses to the banks. Spencer arranged for the submission of forged documents that overstated the ability of buyers to pay on the loans, inflated home prices above market value, and failed to disclose silent second mortgages, all in an effort to induce lenders to make loans that they would not otherwise have made. The lenders suffered large losses when the buyers defaulted on their loans. The fraud was a but-for cause of the losses, for without the fraud, there would have been no mortgages in the first place, and thus no subsequent defaults. It also was reasonably foreseeable to Spencer that a scheme premised on false loan applications and inflated real estate prices would unravel, and that market conditions could exacerbate the losses. See United States v. McKanry, 628 F.3d 1010, 1019-20 (8th Cir.2011). The causal connection between Spencer’s acts and the losses was not unreasonably extended, see United States v. Vaknin, 112 F.3d 579, 589-90 (1st Cir.1997), and we therefore conclude that the district court did not clearly err in refusing to reduce the restitution amount based on external market factors.
Spencer also contends that the district court erred in granting restitution to U.S. Federal Credit Union, because it was not a “victim” for purposes of the MVRA. We consider a ruling on victim status de novo. United States v. Chalupnik, 514 F.3d 748, 752 (8th Cir.2008). Spencer obtained $2.9 million from U.S. Federal as part of a scheme to help a real estate developer and a credit union employee remove under-performing, “toxic” loans from U.S. Federal’s balance sheet. He contends that the credit union was not a victim of wire fraud, however, because a U.S. Federal employee was involved in the fraud. This argument mistakenly conflates the employee with the financial institution. When a fraud is visited upon a financial institution, it is the “institution itself — not its officers or agents — that is the victim of the fraud.” United States v. Saks, 964 F.2d 1514, 1518 (5th Cir.1992). That a customer colludes with a financial institution’s employee does not preclude a finding that the institution was directly and proximately harmed as a result of the fraud. United States v. Sheahan, 31 F.3d 595, 600 (8th Cir.1994).
Spencer next argues that the district court clearly erred by failing to subtract from the restitution amount payments that were made on the mortgages. Because the district court determined that the loss amount was the same for purposes of the guidelines and restitution, the court adopted the formula suggested by the guidelines for determining actual loss *324 amount. It calculated the loss for each property as “the amount of the fraudulently obtained mortgage loans minus any payments made on the loan principal and the value of the collateral at the time of the sentencing.” An IRS special agent testified at sentencing that while some of the home buyers involved in the scheme made payments on their loans, any reduction in principal balance was “very small.” Spencer produced no evidence to compel a finding that repayments were more than negligible. The district court thus did not clearly err in declining to reduce the amount.
Finally, Spencer contends that the district court erred in ordering restitution for losses related to mortgages on four properties that were not listed in the indictment. There was no evidence about these properties at trial, but the government included them in its submission at sentencing. Because Spencer raises this argument for the first time on appeal, we review only for plain error.
Where an offense has as an element a scheme, conspiracy, or pattern of criminal activity, restitution may include losses that are directly caused by the defendant’s conduct as part of the scheme, conspiracy, or pattern. 18 U.S.C. § 3663A(a)(2); United States v. Jefferson, 652 F.3d 927, 932 (8th Cir.2011). The government presented evidence that the loans on these four properties were secured as part of the scheme that was charged in the indictment. Spencer brokered each of these loans, and the loan applications included material misrepresentations, such as misleading information about the source of the down payment for the properties. This evidence supported a finding that the loans for the additional properties were procured as part of the charged scheme, and the district court did not commit plain error by including these losses in the restitution amount.
The judgment of the district court is affirmed.

. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

. Spencer's brief states that he ''maintains his objections” to enhancements that the district court applied under the advisory sentencing guidelines, but he develops no argument as to why there was procedural error on that basis, especially in light of the district court’s statement that "its consideration of the Section 3553(a) factors would lead it to the same sentence even if it had sustained those defendant's objections that I overruled.” S. Tr. 124-25. Spencer makes no argument that the district court did not "adequately explain the chosen sentence,” Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); the dissent’s argument of procedural error on that ground is raised sua sponte. As the dissent acknowledges, moreover, post, at 328-29, a requirement that the district court categorically rehearse each § 3553(a) factor on the record is contrary to circuit precedent.