BRIGHT, Circuit Judge,
concurring.
I write separately because I disagree with the district court’s conclusion, after considering the 18 U.S.C. § 3553(a) factors, that “anything less than the statutory maximum” sentence was inappropriate for Jennifer. This is a special case, and one in which the § 3553(a) factors require lenience. I concur in the result only because Jennifer did not challenge the district court’s § 3553(a) analysis — only the application of the Guidelines — and therefore this issue is not before us. However, the matter deserves comment in a separate opinion.
Jennifer’s offense is very serious, but the court should view this offense in light of the fact that she is a male-coerced female sex offender with significantly less culpability than her husband. Male-coerced female sex offenders are often victims of domestic violence “who join their male partner in abuse that he had previously been committing alone.” Gina Robertiello & Karen J. Terry, Can We Profile Sex Offenders? A Review of Sex Offender Typologies, 12 Aggression and Violent Behavior 508, 514 (2007). Often, as here, their victims are their own children. Id. They are motivated not by their own desires, but rather by their fear of repercussion from their own abuser. Id.
Jennifer is the prototypical male-coerced female sex offender. Brad subjected Jennifer to years of abuse, both physical — choking her, beating her, and shoving her in a closet — and psychological — forcing her to wear a dog collar, and calling her a “fat bitch” and a “whore.” Brad’s abuse was so severe and extensive that a psychologist diagnosed Jennifer with post traumatic stress disorder (PTSD). Despite this abuse — or, perhaps, because of this abuse — Jennifer was unable to leave Brad, even though she tried at least twenty times. This is unsurprising. After all, Brad was not only Jennifer’s husband, but also the father of her children, and, importantly, her drug dealer. She depended on him.
This above dependence left Jennifer in Brad’s control, and in her mind she had no choice but to help Brad sexually abuse H.J. and J.S. Like other male-coerced female sex offenders, Jennifer was motivated by her desire to avoid repercussion from Brad. Her PTSD was so severe that she could not contemplate stopping Brad from abusing her children, so her focus shifted to minimizing the damage he could cause the children. This is why she thought it would be “better for him to abuse a three-month-old” than her children, who “were at the age where they would remember.” (Sent. Tr., p. 78). Indeed, Jennifer’s psychological profile also identified this same thought process: “When confronted with difficult situations ... she chose to comply with the demands of her husband rather than the alternative, such as staying away once she left or calling the authorities.” Significantly, Jennifer never abused her children before she met Brad, and she never abused them after she left Brad. Brad was the driving force behind the abuse — the registered sex offender who first began abusing H.J. and coerced Jennifer into helping him.
Jennifer’s psychological condition is not a legal defense, but it could be a mitigating factor under 18 U.S.C. § 3553(a). First, this condition relates to the nature and circumstances of the offense and Jennifer’s history and characteristics, 18 U.S.C. § 3553(a)(1), because it shows that Jennifer was pulled into this offense by her desire to avoid retaliation from Brad, not out of *904 her own criminal intent. Jennifer’s psychological state minimizes her culpability, and therefore it could warrant lenience. Second, Jennifer’s psychological condition relates to the need to protect the public from further crimes she might commit, 18 U.S.C. § 3553(a)(2)(C), because the fact that she did not commit any sexual offenses against her children before she met Brad and after she left Brad shows it was his influence that led her to commit these crimes. With Brad gone, there is less risk she will re-offend, and less need to protect the public from Jennifer. Each of these factors could mitigate against the statutory maximum sentence imposed on her.
The district court, however, ignored these factors in its 18 U.S.C. § 3553(a) analysis.[5] The Supreme Court requires a district court to consider all of the § 3553(a) factors, to “make an individualized assessment based on the facts presented,” and to explain its chosen sentence adequately to allow for meaningful appellate review. Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). Here, the district court simply paraphrased the § 3553(a) factors, noted that Jennifer participated in a horrific crime, and sentenced her to serve twenty years in jail. (Sent. Tr. pp. 114-15). The sentencing judge engaged in no meaningful § 3553(a) analysis, and, egregiously, she did not explain why she was sentencing Jennifer to the statutory maximum sentence despite the significant abuse she suffered, which drove her to commit this offense.
I believe this sparse § 3553(a) analysis was erroneous. See United States v. Spencer, 700 F.3d 317, 328 (8th Cir. 2012) (Bright, J., dissenting) (encouraging sentencing judges to engage in a meaningful analysis of the § 3553(a) factors). Had Jennifer appealed the sufficiency of the sentence, I would vote to vacate her sentence and remand for resentencing, with instructions to the district court to fully consider the § 3553(a) factors, including the abuse Jennifer suffered and the low likelihood she will commit further crimes. Since Jennifer did not appeal this issue, however, I concur in the judgment.

. This concurrence focuses on the § 3553(a) factors, because I believe the Guidelines here are out of line. The Guidelines do not account for the abuse that drove Jennifer to commit this crime as a male-coerced female sex offender, and therefore they have limited application. See United States v. Deegan, 605 F.3d 625, 645-650 (8th Cir. 2010) (Bright, J., dissenting) (discussing the inapplicability of the Guidelines when case presents unique circumstances that the Guidelines do not take into account).