# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2799
_____

United States of America

*Plaintiff - Appellee*

v.

Pisanu Sukhtipyaroge, also known as Pat

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 21, 2020
Filed: June 16, 2021
_____

Before COLLOTON, GRASZ, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

After helping a high-school student enter the United States on a fraudulent visa, Pisanu Sukhtipyaroge sexually and financially exploited him. The issue on appeal is whether he has to pay restitution for the harm he caused. The district court[1] concluded that he did, and we affirm.

_____

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

I.

Sukhtipyaroge met A.S.M. during a visit to the Dominican Republic. After they became friends, Sukhtipyaroge offered to help A.S.M., a Dominican citizen, get an F-1 student visa to continue his education in the United States. *See* 8 U.S.C. § 1101(a)(15)(F)(i).

Sukhtipyaroge filled out A.S.M.'s application and provided an affidavit of support. In the latter, he promised to "provide food, housing, transportation, school supplies, and . . . cover tuition." The information he gave, however, did not tell the whole story. Nowhere did he say, for example, that A.S.M. would remain in the United States even after school was over. Nor did he disclose that the plan was for A.S.M. to work at a restaurant owned by Sukhtipyaroge's family. Revealing either fact could have jeopardized the application. *See id.*; 8 C.F.R. § 214.2(f)(5)(i), (f)(9).

A critical moment for the scheme came when A.S.M. interviewed at the embassy. Sukhtipyaroge told him beforehand that he had to keep his work at the family restaurant "a secret" and "convince" the interviewers that he "want[ed] to come back to Santo Domingo" when he finished school. A.S.M. did exactly as he was told.

After the application was approved, A.S.M. attended school in the United States for several months, at which point he stopped and began working even longer shifts at the restaurant. Of the $500 per week he earned, Sukhtipyaroge deducted $375—some for living expenses, despite promising in the affidavit that he would pay for them himself. The exploitation was more than just financial: he also forced A.S.M. to perform sex acts "[m]ultiple times a week."

A.S.M. was in no position to refuse. At various points, Sukhtipyaroge had threatened to kick him out of the house, fire him from the restaurant, have him removed from the country, and harm his family. A.S.M. eventually escaped after

-2-

contacting an abuse hotline, but not before he endured nearly two years of abuse that resulted in several suicide attempts and left him with post-traumatic stress disorder.

Sukhtipyaroge pleaded guilty to visa fraud, *see* 18 U.S.C. §§ 2, 1546, and harboring an alien, *see* 8 U.S.C. § 1324(a)(1)(A)(iii), (B)(i). The district court sentenced him to 42 months in prison and, for the visa-fraud offense, ordered him to pay a total of $77,694.40 in restitution, $54,729.40 of which will go directly to A.S.M. For several reasons, Sukhtipyaroge asks us to overturn the restitution order.

II.

Under the Mandatory Victims Restitution Act, a district court "shall order . . . the defendant [to] make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). This obligation, which is for "the full amount of each victim's losses," *United States v. Frazier*, 651 F.3d 899, 903 (8th Cir. 2011) (quoting 18 U.S.C. § 3664(f)(1)(A)), extends to several types of crimes, including, as relevant here, "offense[s] against property," 18 U.S.C. § 3663A(c)(1). The losses must, however, be "caused by the specific conduct that is the basis of the . . . conviction." *United States v. DeRosier*, 501 F.3d 888, 896 (8th Cir. 2007) (quoting *Hughey v. United States*, 495 U.S. 411, 413 (1990)). The underlying circumstances of the crime, in other words, matter.

Within this basic framework, Sukhtipyaroge challenges three aspects of the restitution order. The first two are whether he committed an "offense against property" and whether A.S.M. is a "victim," both of which would ordinarily present questions of law that we review de novo. *See United States v. Chalupnik*, 514 F.3d 748, 752 (8th Cir. 2008); *United States v. Mickle*, 464 F.3d 804, 810 (8th Cir. 2006). The other one is factual and subject to clear-error review: whether he "caused" A.S.M.'s losses through visa fraud. *See United States v. Spencer*, 700 F.3d 317, 323 (8th Cir. 2012). Only the last issue is before us because Sukhtipyaroge has waived the other two.

A.

Sukhtipyaroge argues for the first time on appeal that he did not commit "an offense against property." 18 U.S.C. § 3663A(c)(1)(A)(ii) (covering this type of crime). Not only is this argument new, it is the polar opposite of what he argued before the district court. *See United States v. Thompson*, 289 F.3d 524, 526–27 (8th Cir. 2002) ("On appeal, [the defendant] cannot complain that the district court gave him exactly what [he] asked."). There, he "agree[d]" when he pleaded guilty, and later "reaffirm[ed]" in briefing, that the Mandatory Victims Restitution Act applied. At one point, he even admitted that visa fraud was "an offense against property." 18 U.S.C. § 3663A(c)(1)(A)(ii). Having "intentional[ly] relinquish[ed]" any argument to the contrary before the district court, he cannot now change his position on appeal. *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks omitted) (defining waiver); *see also United States v. Chavarria–Ortiz*, 828 F.3d 668, 671 (8th Cir. 2016) (explaining that "[w]aiver precludes appellate review").

We reach the same conclusion about Sukhtipyaroge's argument that A.S.M. is not a victim. *See* 18 U.S.C. § 3663A(a)(2) (defining "victim"). In the plea agreement, he admitted that A.S.M. was "an identifiable victim who . . . suffered a physical injury or pecuniary loss." It is true, as he points out, that he later clarified that A.S.M. "suffered a loss . . . only to the extent that he was a victim of the fraud and not an accomplice." *See United States v. Archer*, 671 F.3d 149, 171 (2d Cir. 2011) (explaining "that co-conspirators . . . are not victims"). Still, having expressly agreed that A.S.M. was entitled to at least *some* restitution as an "identifiable victim," he cannot now make the exact opposite argument on appeal. *See United States v. Nguyen*, 46 F.3d 781, 783 (8th Cir. 1995) (concluding that the defendant could not "argue[] that he was sentenced under the wrong guideline" when he "acknowledged in the plea agreement that [the guideline] would apply at sentencing"). This challenge, in other words, has been waived too. *See Chavarria–Ortiz*, 828 F.3d at 670–71.

B.

The only issue that Sukhtipyaroge has not waived is whether his "specific conduct" caused A.S.M.'s losses. *DeRosier*, 501 F.3d at 896 (quoting *Hughey*, 495 U.S. at 413); *see also United States v. Hansmeier*, 988 F.3d 428, 439–40 (8th Cir. 2021) (concluding that the defendant did not waive his right to challenge "the amount of loss actually caused by the defendant's offense" even when he "agreed that the [Mandatory Victims Restitution Act] would apply and that the court would order him to pay restitution" (quotation marks omitted)). Given that the district court ordered restitution based on visa fraud alone, the government had the burden of proving that the fraud both directly and proximately caused the losses. *See Spencer*, 700 F.3d at 323 (applying direct and proximate cause in the context of the Mandatory Victims Restitution Act); *United States v. Sharma*, 703 F.3d 318, 323 (5th Cir. 2012) ("The [Mandatory Victims Restitution Act] limits restitution to the actual loss directly and proximately caused by the defendant's offense of conviction."); *see also Hansmeier*, 988 F.3d at 440 (establishing the burden).

A.S.M.'s losses fell into two categories. In the first were future wage loss and medical expenses stemming from the sexual abuse. *See* 18 U.S.C. § 3663A(b)(2) (requiring restitution for "an offense resulting in bodily injury to a victim"). In the other were lost wages, including what was withheld from his paychecks. *See id.* § 3663A(b)(1) (calling for restitution, including "return [of] property" when an offense "result[s] in damage to or loss or destruction of property"). The district court found that both types of losses were caused by Sukhtipyaroge's "specific conduct," *DeRosier*, 501 F.3d at 896 (quoting *Hughey*, 495 U.S. at 413), and in our view, neither finding was clearly erroneous, *see Spencer*, 700 F.3d at 323.

Direct causation here is straightforward. A.S.M. would not have come to the United States nor suffered sexual abuse and financial exploitation without the fraudulently obtained visa. *See Spencer*, 700 F.3d at 323. But for the visa fraud, in other words, neither type of injury would have occurred. *See id.*; *see also United*

*States v. Collins*, 854 F.3d 1324, 1336 (11th Cir. 2017) (explaining that the offense conduct "need not be the sole cause" of the loss (quotation marks omitted)).

More is required for proximate cause, which focuses on whether the losses were reasonably foreseeable under the circumstances. *See Spencer*, 700 F.3d at 323. It is absent when "the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Paroline v. United States*, 572 U.S. 434, 445 (2014).

None of A.S.M.'s losses fall under that description. Take the sexual abuse for instance. Sukhtipyaroge had done it before, with another student whom he had helped bring into the country, and he was planning to do it again. Based on this evidence, the district court found that he had "lured" A.S.M. to the United States "with ulterior motives," including sex. And then he later ensured compliance with his demands through "fear," based on threats that were only possible because he was A.S.M.'s visa sponsor. *Cf. United States v. Johns*, 15 F.3d 740, 742–43 (8th Cir. 1994) (explaining how a defendant had committed sexual abuse under 18 U.S.C. § 2242(1) in part by using "his position as spiritual teacher and healer" to cause the victim to fear harm to herself and others). It could hardly have been a surprise to Sukhtipyaroge when A.S.M. suffered bodily injury from the sexual abuse. *See Paroline*, 572 U.S. at 445; *United States v. Spinney*, 795 F.2d 1410, 1416 (9th Cir. 1986) (concluding proximate cause was met when the "[d]efendant supplied the idea and all the means for" the resulting harm). After all, the visa fraud "created the circumstances under which the [sexual abuse] occurred." *United States v. Hackett*, 311 F.3d 989, 993 (9th Cir. 2002) (quotation marks omitted).

There was an even closer tie between the property losses and the fraud. Before filling out the visa application, Sukhtipyaroge had already been planning to have A.S.M. work at the restaurant. He then ordered A.S.M. to hide this fact by keeping

it "a secret" during the interview.[2]  Later, Sukhtipyaroge took advantage of his role as visa sponsor to force A.S.M. to work at the restaurant despite paying below-market wages and withholding large sums from his paycheck.  As a part of Sukhtipyaroge's plan from the beginning, the losses caused by his financial exploitation were not only reasonably foreseeable, they were a key reason for bringing him here.  *See Spencer*, 700 F.3d at 323 (bearing in mind the "premise[]" of the scheme); *Collins*, 854 F.3d at 1336 (considering whether a harm "was the natural—if not inevitable—consequence of [the defendant's] actions").

## III.

We accordingly affirm the judgment of the district court.

_____

---

[2]To the extent Sukhtipyaroge argues that causation does not exist because A.S.M. participated in the scheme, it is just an attempt to get his waived A.S.M.-is-not-a-victim argument in through the back door.  *See Archer*, 671 F.3d at 171 ("[C]o-conspirators . . . are not victims.").  In any event, we reject it.  *See United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007) (explaining that "any subsequent action that contributes to the loss, such as an intervening cause," does not unreasonably extend the causal chain if it is "directly related to the defendant's conduct" (quotation marks omitted)).