# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3235
No. 22-3244
No. 22-3601

_____

United States of America

*Plaintiff - Appellee*

v.

Okwuchukwu Jidoefor

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Minnesota
_____

Submitted: October 17, 2023
Filed: April 10, 2024
_____

Before SMITH, Chief Judge,[1] LOKEN and COLLOTON,[2] Circuit Judges.
_____

LOKEN, Circuit Judge

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

Okwuchukwu Jidoefor, a Nigerian citizen, pleaded guilty to mail fraud in violation of 18 U.S.C. § 1341. In a paragraph of the written plea agreement entitled Collateral Consequences, the U.S. Attorney's Office for the District of Minnesota agreed "to send a letter to the immigration authorities outlining [Jidoefor's] cooperation in prior cases" and to file a copy of the letter under seal at the change-of-plea hearing. The district court accepted the plea. After the sentencing hearing, the lead Assistant U.S. Attorney (AUSA) sent a letter to U.S. immigration authorities detailing Jidoefor's past cooperation with law enforcement, as the plea agreement required (the October 13 letter). After the AUSA retired, an internal mistake in the U.S. Attorney's Office resulted in the U.S. Attorney for the District of Minnesota sending a second letter stating the first letter was not the Office's official position. The mistake was soon discovered, and the U.S. Attorney sent a third letter retracting the second letter and reaffirming the October 13 letter.

Jidoefor moved to remedy the government's breach of the plea agreement. The government admitted the second letter was a breach. The district court[3] denied the motion, finding the government's third letter was an adequate remedy. Jidoefor appeals, arguing the district court erred in not providing a remedy. He separately appeals the district court's sentence and its order for restitution. We consolidated the three appeals and will discuss them separately in this opinion as they turn on different facts and legal issues. We affirm.

## I. The Breach of Plea Agreement Issue.

In 2012, Jidoefor was convicted of bank fraud for his role in a multi-million dollar scheme. He cooperated with the government's prosecution of several other participants and was sentenced to time served. In August 2017, while serving his

---

[3]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

five-year term of supervised release for that conviction, Jidoefor was again indicted for fraud in the District of Minnesota. Two counts of a twelve-count superseding indictment against Jidoefor and five others charged him with conspiracy to commit mail and wire fraud and a substantive count of mail fraud. The indictment included forfeiture allegations.

After indictment, Jidoefor failed to appear and a bench warrant issued for his arrest. He was apprehended in New Jersey in June 2020, living under an alias. Back in Minnesota, he rejected multiple plea offers by the prosecution that did not include a government promise to send a letter to immigration authorities that he considered "central" to his efforts to prevent removal.[4] At a June 14, 2022 pretrial hearing, the government agreed to write a letter; Jidoefor agreed to plead guilty to the substantive fraud charge and to violating a condition of supervised release; the government agreed to dismiss the conspiracy charge; and the parties agreed to recommend a sentence of time served for both the mail fraud offense and the violation of supervised release. At that hearing, the district court made sure Jidoefor understood that the U.S. Attorney cannot tell immigration authorities what to do, as the plea agreement expressly stated. A copy of the promised letter was filed with the court.

The district court held an evidentiary sentencing hearing on October 13, 2022. At its conclusion, the court imposed concurrent prison sentences of time served (27 months) on both counts, with no supervised release to follow, and ordered Jidoefor to pay mandatory restitution of $22,028.02 based on the total loss to a fraud victim, Nationwide Insurance Company (Nationwide). Later that day, AUSA David MacLaughlin -- the lead prosecutor -- sent the agreed October 13 letter to immigration authorities detailing Jidoefor's past cooperation with law enforcement

---

[4]Jidoefor emigrated to the United States on a temporary visa, overstayed, and was ordered removed in 2012. The removal order was subsequently stayed but reinstated in 2018 and active at the time of the pretrial hearing.

and stating that his "fear of retribution in the event of his removal to Nigeria is not objectively unreasonable." The letter did not state that it was sent pursuant to a plea agreement. Two weeks later, AUSA MacLaughlin retired.

After sentencing, Jidoefor was transferred to the custody of Immigration and Customs Enforcement (ICE), a division of the Department of Homeland Security (DHS), pending removal proceedings. In mid-November, ICE denied Jidoefor's application to stay those proceedings. He filed motions to stay removal and reopen the removal proceedings with the Board of Immigration Appeals (BIA). Meanwhile, DHS's Civil Division chief in Minnesota contacted the U.S. Attorney's Office regarding the October 13 letter because of other pending civil litigation with Jidoefor. Unaware of Jidoefor's plea agreement to the contrary, the U.S. Attorney's Office management incorrectly concluded the now-retired AUSA sent the letter "in his personal capacity." On November 14, U.S. Attorney Luger responded to the DHS inquiry with a letter stating:

> I write concerning the October 13, 2022 letter written to your office by former AUSA David MacLaughlin. In the letter, Mr. MacLaughlin described his understanding of Mr. Jidoefor's role as a cooperator in various cases handled by this office. He also provided his personal opinion regarding the potential implications of that role with respect to Mr. Jidoefor's removal. I write to clarify that Mr. MacLaughlin's October 13th letter reflects his personal opinion only, and is not the position of this office.

Two weeks later, when the U.S. Attorney's Office learned that AUSA MacLaughlin sent the October 13 letter pursuant to the government's plea agreement with Jidoefor, U.S. Attorney Luger immediately sent DHS a third letter stating:

> I write regarding my letter dated November 14, 2022. The November 14, 2022 letter was issued due to a miscommunication in my Office, and I hereby retract it. This Office confirms its commitment to the plea

-4-

agreement with Mr. Jidoefor and AUSA MacLaughlin's October 13, 2022 letter. We will file this letter dated November 28, 2022 on the docket today in *United States of America v. Jidoefor*, 16-cr-340-MJD-TNL.

Also on November 28, Jidoefor filed a motion in the district court seeking "an Order providing appropriate relief for the government's bad faith violation of the parties' plea agreement," and arguing the government's November 14 retraction letter "deliberately negated the [immigration] benefit that it agreed to provide to Mr. Jidoefor as part of its plea agreement with him." The government responded, explaining that the breach was inadvertent, stating that the government stood behind its promises made in the plea agreement, and arguing that any short-lived breach had been remedied. The government attached a copy of the November 28 letter and noted that DHS had filed a supplemental brief in the removal proceeding "withdrawing" the November 14 letter and providing the BIA a copy of the November 28 letter.

On December 8, the BIA denied Jidoefor's motion to stay removal proceedings. This ruling made him subject to immediate removal, and he was removed to Nigeria in January 2023.[5] On December 14, the district court denied Jidoefor's motion to remedy breach of the plea agreement. The court agreed with the parties that the November 14 letter was a breach and noted that "the government's material breach of the plea agreement" after the guilty plea has been accepted "violates the defendant's due process rights," quoting United States v. Mosley, 505 F.3d 804, 809 (8th Cir. 2007). However, the court noted, "some breaches may be curable upon timely objection -- for example, where the prosecution simply forgot its commitment

_____

[5]In a Fed. R. App. P. 28j letter, the government submitted an unpublished BIA decision in May 2023 denying Jidoefor's motion to reopen the removal proceedings as untimely and number-barred. In declining to reopen the proceedings *sua sponte*, the BIA stated that it "considered the documents submitted in support of the motion, including the letter dated October 13, 2022, regarding the respondent's cooperation." Matter of Jidoefor, No. A096-687-493 (BIA May 8, 2023).

and is willing to adhere to the [plea] agreement," quoting <u>Puckett v. United States</u>, 556 U.S. 129, 140 (2009) (emphasis omitted).  Here, Jidoefor received the sentencing benefits of the plea agreement.  While the promised October 13 letter was important to his decision to plead guilty, the court found that the government had sufficiently explained the origin of the November 14 letter, and the November 28 letter was a timely retraction of that mistake.

On appeal, Jidoefor argues the district court erred in denying him a remedy for the government's breach of the plea agreement.  The parties agree the November 14 letter was a breach of the plea agreement.  The question is whether the district court erred in determining that the government's November 28 letter was an adequate remedy.  When the government's alleged breach of the plea agreement "directly affects the lawfulness of the sentence,"

> [t]here are two potential remedies . . . remand for specific performance and withdrawal of the guilty plea.  The decision as to which to grant rests in the sound discretion of the [district] court.  Specific performance is the preferred remedy.

<u>United States v. Van Thournout</u>, 100 F.3d 590, 594 (8th Cir. 1996) (quotation omitted).  Those two remedies derive from <u>Santobello v. New York</u>, 404 U.S. 257 (1971), the leading case dealing with the government's obligation to comply with plea agreement commitments.  In <u>Santobello</u>, the government agreed not to make a sentencing recommendation.  At sentencing, the government instead recommended the maximum sentence, a breach that directly affected the sentence to be imposed.  The district court in imposing the recommended maximum sentence explicitly stated it would have imposed that sentence regardless what the government recommended.  Without reaching the question whether the sentencing judge would have been influenced by disclosure of the details of the plea negotiations, the Supreme Court reversed.  "[W]hen a plea rests in any significant degree on a promise or agreement

-6-

of the prosecutor, so that it can be said to be part of the inducement or consideration [for the contract]," the Court explained, "such promise must be fulfilled." Id. at 262. The Court remanded to the state court, explaining:

> The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances . . . require only . . . specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether . . . the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty. We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge. Id. at 263.

We have applied Santobello's resolution of the remedy question in many cases that, like Santobello, involved the government's breach of a promise directly related to sentencing, such as whether the defendant is entitled to an acceptance-of-responsibility adjustment. See United States v. Collins, 25 F.4th 1097, 1101-02 (8th Cir. 2022). In Mosley, we concluded that the government breached the plea agreement by arguing the defendant's pre-plea statements established that she failed to qualify for an acceptance-of-responsibility sentence adjustment; we remanded for resentencing by a different judge, as Santobello required: "By holding that it was immaterial whether the prosecution's breach influenced the trial judge's decision, Santobello necessarily rejected the view that the prosecution's breach could have been harmless. . . . [T]he consensus view among our sister circuits [is] that harmless-error analysis does not apply when the government breaches a plea agreement." 505 F.3d at 810. We acknowledged that another panel did not apply this "general rule" in United States v. E.V., 500 F.3d 747, 754-55 (8th Cir. 2007), and we noted that other courts "have identified 'exceptions' to the general rule" but concluded these "potential exceptions" were not "applicable here." Mosley, 505 F.3d at 810 n.1.

-7-

As the district court recognized, the Supreme Court since our decision in Mosley has addressed Santobello remedy issues but not the harmless error question. In Puckett, resolving a conflict in the circuits, the Court held that "Rule 52(b)'s plain-error test applies to a forfeited claim . . . that the Government failed to meet its obligations under a plea agreement." 556 U.S. at 133. The Court rejected Puckett's contention that rigorous plain-error review should not be required because "it is too late to 'unring' the bell even if an objection is made." Id. at 139. Not so, the Court reasoned -- "*some* breaches may be curable upon timely objection -- for example, where the prosecution simply forgot its commitment and is willing to adhere to the agreement," id. at 140 (emphasis in original), one of the "potential exceptions" we noted in Mosley, 505 F.3d at 810 n.1.

Numerous cases from other circuits apply what is called a "cure" rule -- the defendant is not entitled to one of the two Santobello remedies if the government's unequivocal retraction of its plea agreement breach "fully cures its breach through specific performance of its obligation," one of the exceptions noted in Mosley, 505 F.3d at 810 n.1. See, e.g., United States v. Cruz, No. 23-1192, 2024 WL 997591, at *3-5 (3d Cir. Mar. 8, 2024); United States v. Oppenheimer-Torres, 806 F.3d 1, 4 (1st Cir. 2015); United States v. Amico, 416 F.3d 163, 165-68 (2d Cir. 2005); United States v. Hutto, 853 F. App'x 445, 450-51 (11th Cir. 2021); United States v. Diaz-Jimenez, 622 F.3d 692, 693-94 (7th Cir. 2010).

We have not yet recognized a "cure rule" and continue to apply Mosley when the government's breach of the plea agreement related directly to sentencing. We have noted that other circuits have adopted and applied the rule but we have declined to do so when the issue arose in cases where either the government did not attempt to cure or the purported cure was not "the kind of 'unequivocal retraction' other courts expect." Collins, 25 F.4th at 1102 n.1; see United States v. Brown, 5 F.4th 913, 916 (8th Cir. 2021). *In a Mosley type of case* -- where the government's breach was directly related to the sentence imposed -- we are bound by Mosley's resolution

-8-

of the harmless error issue. Even an unequivocal retraction of this type of breach cannot "unring" the sentencing bell.

But this is not that type of case. Here, the promise the government's November 14 letter breached was not the government's sentencing recommendation or otherwise directly related to the sentence the district court imposed. It was the government's promise, specifically described in the plea agreement as a "Collateral Consequence[]," to send a letter to immigration authorities that was intended to influence their decision whether to remove Jidoefor from the United States because of his crimes in this country. Without question, however, this was an issue of great importance to Jidoefor, and the record supports an inference that this promise induced his agreement to plead guilty.

Santobello recognized the importance of ensuring that promises made to induce guilty pleas will be fulfilled. But the Court did not consider whether a defendant who nonetheless receives the benefit of his plea bargain in one of the ways Mosley labeled "exceptions" to the general rule -- situations where the government "fully cures its breach through specific performance of its obligation," or "the breach is so minor . . . the defendant's reasonable expectations under the agreement are fulfilled," or the court "imposed the lowest sentence possible," 505 F.3d at 810 n.1 -- is *also* entitled to the alternative Santobello remedies. At least where the government breaches a collateral obligation not directly related to sentencing, and the government has fully cured its breach through specific performance of its collateral obligation, we conclude the breach has become immaterial and the district court has discretion to deny a further Santobello remedy.

Here, the U.S. Attorney's November 28 retraction letter preceded the BIA's December 2022 decision denying Jidoefor's motion to stay removal and its May 2023 decision denying Jidoefor's motion to reopen removal proceedings. The BIA expressly stated it considered the government's October 13 letter, which complied

with its plea agreement obligation, in deciding whether to reopen *sua sponte*. The plea agreement and the district court in accepting the plea advised Jidoefor that the U.S. Attorney cannot tell immigration authorities what to do. Thus, the unequivocal November 28 retraction "cured" the government's November 14 breach of the plea agreement by providing Jidoefor what he bargained for -- a statement from the government that he hoped would favorably impact his ongoing removal proceedings, received by the decisionmaker prior to its unfavorable decision. Guaranteeing a favorable immigration decision is not what Jidoefor bargained for. Cf. United States v. Gillen, 449 F.3d 898, 902-03 (8th Cir. 2006) (holding similar language should have alerted defendant that plea agreement was not binding on district court). Nor was the retraction letter equivocal because it states the government "confirms its commitment to the plea agreement with Mr. Jidoefor," as Jidoefor contends. The government did not promise not to disclose that. The October 13 letter, which the BIA expressly said it considered, did not mention that it was sent pursuant to a plea agreement. Jidoefor cites no relevant authority supporting this speculative contention.

"It's true . . . that a bell cannot be unrung. But a mistake is not a bell, and usually can be corrected." Diaz-Jimenez, 622 F.3d at 696. For the foregoing reasons, we conclude the district court did not abuse its discretion by concluding that the government's breach of a collateral plea agreement promise was cured, adequately corrected, and specifically performed by the November 28 letter retracting the November 14 breach and fully recommitting the government to the October 13 letter that fulfilled this collateral promise. There was no material breach and no further remedy was warranted; "the government's cure of [the] breach . . . obviate[d] the need for further action from the district court to salvage the plea agreement." United States v. Dulcer, 806 F. App'x 757, 763 (11th Cir. 2020).

## II. The Restitution Issue.

The underlying fraud charges arose out of Jidoefor's participation in an expansive scheme by Huy Ngoc Nguyen and five co-defendants to defraud auto insurers by submitting claims through his chiropractic clinic, Healthcare Chiropractic, for medically unnecessary or nonexistent chiropractic services. The indictment alleged that Jidoefor acted as a "runner" for Nguyen, recruiting patients for these fraudulent services and staging purposely crashed accidents to obtain kickback payments from Nguyen and make claims for various auto insurance benefits. Count 7 of the Superseding Indictment charged that Jidoefor committed mail fraud when Nationwide mailed a check to Healthcare Chiropractic in December 2015 for chiropractic services rendered to T.J. following an October 25 staged accident. In the plea agreement, Jidoefor stipulated to the following facts:

> a. From . . . 2010 and continuing . . . through . . . 2016 . . . there was a scheme and artifice to defraud providers of no-fault automobile insurance policies of money and property. The defendant joined the scheme in 2015.

> b. From . . . 2015 through . . . 2016, the defendant caused to be sent . . . mailings . . . for the purpose of executing and attempting to execute such scheme and artifice described above. This included the mailing of a check from Nationwide Insurance Company to Healthcare Chiropractic relating to patient T.J. on approximately December 18, 2015, as described in the Corrected Superseding Indictment.

> c. As part of this scheme . . . the defendant recruited automobile accident victims to show up for appointments at Huy Nguyen's chiropractic clinic, received illegal payment for recruiting these patients, and made payments to patients to induce them to receive medically unnecessary chiropractic services. One accident for which the defendant acknowledges responsibility occurred on October 25, 2015.

The parties agreed that restitution would be required under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, but they "agree[d] to litigate the appropriate amount of restitution at sentencing."

Though the indictment alleged that Jidoefor was responsible for three staged accidents, at the sentencing hearing the government only presented evidence of insurer losses from the purported accident on October 25, 2015 involving patient T.J. The government alleged two Nationwide losses, $12,028 it paid for a Personal Injury Protection (PIP)[6] claim for chiropractic and medical care T.J. received after the staged accident, and a $10,000 Bodily Injury (BI) settlement paid to T.J. for her pain and suffering.

At the hearing, Agent Ferris of the Minnesota Commerce Fraud Bureau, testifying for the government, presented a summary Nationwide document detailing the losses it incurred as a result of the October 25 staged accident. He also presented a spreadsheet summarizing his independent verification of the loss amounts on the summary document, created from additional Nationwide documents that were certified true and correct by Nationwide's custodian of records and verified by a special investigator.

Agent Ferris testified that he interviewed T.J. on two occasions. T.J. admitted that Jidoefor and two other men arranged to stage the October 25 accident, and that she later claimed to have been injured when she was not even in the car during the staged accident. Agent Ferris further testified that T.J. said Jidoefor was the "driving force" behind the staged accident, was present during the staged accident, and referred T.J. to Healthcare Chiropractic for medical care and to Martin Montilino, a

---

[6]Personal Injury Protection is an automobile policy provision that requires the insurer to pay up to $20,000 in medical bills and/or $20,000 in lost wages as a result of an individual being involved in a car accident.

-12-

local personal injury lawyer, to seek the BI award, though Jidoefor did not physically bring T.J. to either the clinic or Montilino's office. The district court overruled Jidoefor's repeated objections to Agent Ferris's testimony. Attorney Montilino, appearing as a defense witness, testified that he represented T.J. in claiming damages for the October 25 accident but did not believe Jidoefor referred T.J. to him. On cross-exam, Montilino confirmed that "the no-fault PIP benefits and the amount of the BI settlement" presented by the government were "accurate."

At the close of the evidence, Jidoefor argued the government had not met its burden to show that the claimed losses "were caused by Mr. Jidoefor." Counsel argued the government had not proved Jidoefor either brought T.J. to Montilino to seek a BI award from Nationwide or took T.J. to the chiropractic clinic. Counsel argued the government's supporting testimony was vague double hearsay that did not establish the "necessary proof by a preponderance of the evidence." In addition, counsel argued the records from Nationwide were "pretty old" and had not been supported "either through testimony or sworn statements by officials with knowledge of [Nationwide's] losses to verify that they actually . . . occurred." The district court disagreed, found Jidoefor responsible for $22,028.02 in losses for PIP payments and the BI settlement, and ordered restitution in that amount.

On appeal, Jidoefor argues the district court erred in calculating Nationwide's losses and imposing the $22,028 restitution obligation. The government bears the burden of proving by a preponderance of the evidence that the offense of conviction "both directly and proximately caused the losses." United States v. Sukhtipyaroge, 1 F.4th 603, 607 (8th Cir. 2021). In reviewing loss calculations underlying a restitution order, "we review the district court's legal conclusions de novo and its factual findings for clear error, keeping in mind that the district court need make only a reasonable estimate of the loss." United States v. Ruzicka, 988 F.3d 997, 1013-14 (8th Cir. 2021) (quotations omitted).

Jidoefor first argues that the "government failed to present sufficient competent evidence that . . . Jidoefor caused the claim[ed] losses for purposes of loss calculation or restitution." He emphasizes the alleged unreliability of the government's hearsay evidence. This contention is an uphill struggle on appeal. "[A] district court is permitted to rely on relevant hearsay or other evidence 'without regard to its admissibility under the rules of evidence applicable at trial,' so long as that evidence possesses 'sufficient indicia of reliability to support its probable accuracy.'" United States v. Sheridan, 859 F.3d 579, 583 (8th Cir. 2017), quoting USSG § 6A1.3(a). "The determination of whether hearsay evidence is sufficiently reliable to support a sentencing decision depends on the facts of the particular case and is committed to the sound discretion of the district court." United States v. Cassidy, 6 F.3d 554, 557 (8th Cir. 1993) (citations omitted).

However, we need not address this issue in detail because Jidoefor's above-quoted admissions in the plea agreement establish both direct and proximate cause for Nationwide's BI and PIP losses by a preponderance of the evidence. Jidoefor admitted he "joined" a "scheme and artifice to defraud providers of no-fault automobile insurance policies of money and property." As part of this scheme, he "*caused* to be sent . . . a check from Nationwide Insurance Company to Healthcare Chiropractic relating to patient T.J." (Emphasis added.) This check was part of the PIP award Nationwide paid to cover T.J.'s medical costs. Jidoefor also "acknowledge[d] responsibility [for the accident that] occurred on October 25, 2015." Staging that accident "created the circumstances" for the fraudulent BI claim that Nationwide paid to settle. Sukhtipyaroge, 1 F.4th at 608 (quotation omitted). Jidoefor thus admitted to causing Nationwide's losses in the amount of the PIP and BI payments. These losses were "not only reasonably foreseeable, they were a key reason" for staging the auto accident and referring T.J. to the clinic. Id.

Jidoefor further argues the government failed to provide sufficient evidence of Nationwide's actual losses. Unlike the indefinite agent testimony in United States v.

-14-

Adejumo, 848 F.3d 868, 871 (8th Cir. 2017), a decision on which Jidoefor relies, Agent Ferris presented a summary of losses prepared by Nationwide and described his own independent verification using Nationwide documents certified by Nationwide as true and correct and provided to defense counsel before the hearing. There was no evidence that Nationwide overestimated its losses. Indeed, defense witness Montilino, with considerable first-hand knowledge, confirmed the loss figures were "accurate."

Based on this record, the district court did not abuse its substantial discretion in calculating actual losses of $22,028 and ordering restitution in that amount.

### III. The Sentencing Issue.

Based on the total loss amount, the district court calculated an advisory guidelines range of 8 to 14 months imprisonment for the mail fraud offense.[7] The court imposed a concurrent prison sentence of time served, approximately 27 months at the time of the sentencing hearing, with no supervised release to follow, for both offenses. On appeal, Jidoefor argues the time-served sentences are substantively unreasonable because the "district court provided no explanation for its imposition of this substantial upward variance" from the advisory guidelines range. He argues "[t]he case must be remanded for resentencing with instructions to sentence Mr. Jidoefor within the applicable Guidelines."

This contention is without merit for multiple reasons. First, Paragraph 9 of the plea agreement provides: "The parties jointly agree to recommend a sentence of time served to resolve both" the criminal case and the supervised release violation case. "A defendant who explicitly and voluntarily exposes himself to a specific sentence

---

[7]The plea agreement contemplated a higher range -- 24 to 30 months -- based on losses from all three staged accidents alleged in the indictment.

may not challenge that punishment on appeal." <u>United States v. Nguyen</u>, 46 F.3d 781, 783 (8th Cir. 1995). Second, the time-served prison sentence was completed (served) when issued, without regard to how many months Jidoefor had served at that time. Remanding for resentencing to a different number of months time-served would not provide a sentencing remedy for Jidoefor, who has been removed from the United States -- a textbook example of harmless procedural error.

For these reasons, this contention is without substantive merit. In addition, because Jidoefor has served the time-served sentence he is challenging, there is a serious question of mootness that affects this portion of the three consolidated appeals. "[W]hen a defendant challenges only an expired *sentence* . . . the defendant must bear the burden of identifying some ongoing collateral consequence that is traceable to the challenged portion of the sentence and likely to be redressed by a favorable judicial decision." <u>United States v. Juvenile Male</u>, 564 U.S. 932, 936 (2011) (quotation omitted, emphasis in original). Here, Jidoefor challenges only the length of his now-served sentence. He alleges no collateral consequences, indeed, he does not acknowledge the issue or address the question of mootness. Thus, as in <u>Owen v. United States</u>, 930 F.3d 989, 990 (8th Cir. 2019), it appears that Jidoefor "has obtained all of the relief that he sought" regarding the length of his time-served sentences.

The judgment of the district court is affirmed.

_____